GEORGE G. TENNANT, TRUSTEE OF DAILEY & IVINS, APPELLANT, v. STATE BOARD OF TAXES AND ASSESSMENTS ET AL., RESPONDENTS.

Argued November 17, 1920—Decided February 28, 1921.

1. Personal property of a bankrupt, in the possession of a trustee in bankruptcy, is liable to taxation in the taxing district where such property is "found" on the date fixed by law for assessment of taxes; and this includes money deposited in bank.
2. The statutory provision that "personal property in the possession or under the control of a trustee * * * shall be assessed in his name as such," is merely directory and has no force in exempting the property itself from the general language of the statute making such property taxable.
3. It seems that a ministerial officer of court, having in his possession seized property by virtue of court process, is not liable for tax thereon; but this does not exempt the property itself.
4. A vessel permanently moored in the tidewaters of New York bay or the Hudson river within the territorial lines of New Jersey, awaiting sale, and so found on the date of the annual assessment, is liable to taxation in New Jersey.

On appeal from the Supreme Court, which on *certiorari* affirmed a judgment of the state board of taxes and assessment.

For the appellant, *George G. Tennant* (*Albert C. Wall* and *Andrew J. Steelman* on the brief).

For the respondent city of Jersey City, *Edward P. Stout.*

The opinion of the court was delivered by

PARKER, J. This is a dispute over the right of Jersey City to tax certain personal property of the bankrupt firm of Dailey & Ivins for taxes of the year 1918. The two principal questions are, first, whether the property now in question was taxable at all under the laws of this state because of the title, possession, qualified ownership, or whatever it may be called, to which it was subjected at the taxing date, May 20th, 1918, and secondly, whether the property had such a *situs* within the taxing district of Jersey City as to permit the tax lien to attach. By the various appeals from the local assessors to the county board and thence to the state board, and the *certiorari* from the Supreme Court, all disputed matters seem to have been eliminated except a fund in bank, and a tugboat which, on May 20th, was moored (as we were informed on the argument) in the South cove of Jersey City.

As to the fund in bank, it is stipulated to be part of the proceeds of sale of a shipyard of Dailey & Ivins, and it is claimed that it should not be included in the valuation because the attorneys in the case stipulated "that the question of the right to assess against the proceeds of sales is not to be considered on this appeal" (to the state board). If it was meant thereby to stipulate a legal rule for the state board and the courts, such a stipulation, as the board properly pointed out, is futile. The board held this fund taxable and the Supreme Court affirmed that ruling. Both tribunals properly took into consideration the questions of law involved; and our sole concern here is whether they rightly decided them. As the same reasoning applicable to this fund applies in part to the tugboat, both will be considered together in this aspect.

On this phase of the case the argument seems to be that the fund and the tugboat, being held by the trustee in bankruptcy, were in the custody of the law, and that property in such custody is not taxable. On the broad question whether property of a bankrupt in the hands of a trustee in bankruptcy is exempted from state taxation, the answer of the United States Supreme Court is decidedly in the negative. *Swarts* v.

*Hammer,* 194 *U. S.* 441. This is dispositive of the taxability of the bank deposit in this aspect. As to the tugboat, the appellant further argues that on May 20th it was not actually in his possession but in that of the marshal, and that by reason of a clause in the Tax act of 1903 it is not subject to taxation. In dealing with this, it should be borne in mind that the tax was imposed against "Dailey & Ivins, George G. Tennant, Trustee in Bankruptcy."

Appellant invokes the language of section 11 of the Tax act of 1903 (*Comp. Stat., p.* 5091) which, after prescribing the place of taxation, provides that "personal property in the possession or under the control of any person as trustee, guardian, executor or administrator, shall be assessed in his name as such," and argues that because he, as trustee, did not have entire possession or control of the tug, *ergo,* it was not taxable. But this statutory language is merely directory with respect to the differentiation of trust property from individual property in the name to which it is assessed, and in nowise as to its general taxability. One good reason for such differentiation is to spare the trustee's individual property from seizure for non-payment of taxes on trust property. Whatever the reason or reasons, the clause has no bearing on taxability of the property. That is settled by section 2, which, in broad and sweeping terms, subjects to taxation "all property, real and personal, within the jurisdiction of this state, not expressly exempted by this act or excluded from its operation." The argument, therefore, simmers down to this, that because appellant had not possession or control of the tug, the assessment in his name was erroneous. But this does not invalidate it; on the contrary, section 30 of the act (*Comp. Stat., p.* 5109) provides that "no assessment of real or personal property shall be considered invalid because listed or assessed in the name of one not the owner thereof." To quote appellant's brief, "the tax law does not deal with fine-spun theories of title." So far as the clause relied on is concerned, we conclude that it had no effect at all on the liability of the tug to taxation.

It is next argued that the tug was further in the "custody of the law" because of the possession by the marshal so as to be exempt. The facts are that the tug was registered at the New York custom house and had been ordinarily employed in and about the waters of New York harbor. About the time of the bankruptcy (appellant was appointed trustee May 2d, 1918) the tug was brought into tidewaters on the New Jersey side adjacent to Jersey City, and moored there apparently unused, and so remained until after it was sold, June 17th, 1918. During this period, as we understand the evidence, several libels in admiralty were filed and served by the United States marshal for the district of New Jersey. Sale was made jointly by the appellant, as trustee, and by the marshal, and from the proceeds the libels were paid off and the balance was paid to or retained by the trustee. The sale price was $30,-000, and this was adopted by the state board as the fair value of the tug, which was subjected to tax at that valuation, together with the fund already in bank.

As a preliminary to ascertaining whether this tug was exempt because in the custody of the marshal, it is necessary to determine the other question raised, whether apart from such claim of exemption it was taxable on May 20th, 1918, in the taxing district of Jersey City. In our opinion, it was so taxable. As an active tug plying in the waters of New York harbor it was taxable at the residence of the owners or the permanent *situs* of the property, it is immaterial which. *American Mail Steamship Co.* v. *Crowell,* 76 *N. J. L.* 54; *Shrewsbury* v. *Merchants' Steamboat Co., Id.* 407; *West Shore Railroad Co.* v. *State Board,* 82 *Id.* 37; 84 *Id.* 768. But with the bankruptcy its condition became one of passivity; it was a mere chattel secured from drifting and awaiting a sale. Had it been drawn out on a ship railway, or even tied up to a wharf on the Jersey City water front, its taxable *situs* would be indubitable. While the point does not seem to be definitely argued, we gather from the assertion that the tug was in the "tidewaters of New York bay" that it is claimed to have been out of the taxing jurisdiction of New Jersey because of the interstate treaty limiting the "jurisdic-

tion" of New Jersey on the waters of New York bay and the Hudson river. *Comp. Stat., p.* 5358. But this jurisdiction has been held by the courts of both New York and New Jersey to be a jurisdiction simply for the exercise of the police power. *People* v. *Central Railroad of New Jersey,* 42 *N. Y.* 283; *Central Railroad Co.* v. *Jersey City,* 70 *N. J. L.* 81; *S. C.,* 209 *U. S.* 473. In the opinion of Mr. Justice Garrison, in 70 *N. J. L.* (at *p.* 97), it is declared that "the sovereign power of taxation over all the territory thus defined (*i. e.,* to the middle of the Hudson river) resides in the State of New Jersey." See *Cook* v. *Weigley,* 72 *N. J. Eq.* 221. A vessel more or less permanently moored within the territory is, in our opinion, personal property "found" within the taxing district, in the same manner as, *e. g.,* coal on storage pending a sale and removal. *Lehigh and Wilkes-Barre Coal Co.* v. *Junction,* 75 *N. J. L.* 922. It is pertinent to note, while on this subject, that the libels against this tug were filed in the United States District Court for the district of New Jersey, and the seizure was made by the marshal of that court, in conformity, as it seems to us, with the statutory provision that "the State of New Jersey shall constitute one judicial district" (*Rev. Stat. U. S.,* § 531; *Comp. Stat. U. S.* 1913, § 1082), treated as meaning that the district extends to the middle of the river, for all purposes of executing civil process out of that court

The tug, then, being legally "found" in the taxing district of Jersey City, it only remains to inquire whether, because under seizure by the marshal it was exempted by any rule of law from taxation as against its general owners, Dailey & Ivins, or the trustee in bankruptcy, either by provision in the statute or rule laid down by decision of the courts. It is not exempted by statute; on the contrary, the language of the second section of the act of 1903, already quoted, plainly includes it in its purview.

But appellant further invokes the rule laid down at the end of the opinion of this court in *Trustees* v. *City of Trenton,* 30 *N. J. Eq.* (at *p.* 686), where mortgages to the Chancellor in his official capacity were held exempt. This rule has

had a somewhat checkered career, but an examination of its history is not now to the point, though later statutes and decisions are cited for convenience. *Davison* v. *Silvers,* 41 *N. J. L.* 505; *Pamph. L.* 1879, *p.* 54; *Pamph. L.* 1882, *p.* 120; *Ming's Case,* 39 *N. J. Eq.* 1; *Shotwell* v. *Dalrymple,* 49 *N. J. L.* 530; *Dunham* v. *Cox,* 44 *N. J. Eq.* 273; *Pamph. L.* 1887, *p.* 163; *Elizabeth* v. *Chancellor,* 51 *N. J. L.* 414; *Dilts* v. *Taylor,* 57 *Id.* 369, 373; *Elizabeth* v. *Chancellor,* 64 *Id.* 502; *Pamph. L.* 1898, *p.* 202; *Swope* v. *Fraser,* 58 *Atl. Rep.* 531; *Chancellor* v. *Elizabeth,* 65 *N. J. L.* 479; *Chancellor* v. *Seiberlich,* 75 *N. J. Eq.* 501, 510; *Tax act* 1903, § 3, ¶ 2; *Comp. Stat., p.* 5078. The rule is something of an anomaly, and, assuming for present purposes that it stands unimpaired at this time, it is limited in scope and should not be extended, especially in face of the sweeping language of section 2 of the statute, which was re-enacted in 1918. *Pamph. L., pp.* 847, 848. This rule was never broad enough to exempt real or personal estate in the administrative charge of a receiver or similar officer (*New Jersey Southern Railroad Co.* v. *Board,* 41 *N. J. L.* 235, 248, 249; *Kirkpatrick* v. *Board,* 57 *Id.* 53), and we think our reports will be searched in vain for a case wherein it was held, or even claimed, that real or personal property otherwise liable to taxation is exempt because of having been levied on or attached by court process. The court officer himself (as in this case the marshal) is ordinarily not liable for the tax (37 *Cyc.* 797; *In re Kellinger,* 9 *Paige* 62); but that does not exempt the property, nor, as we view it, the general owner.

These considerations lead to an affirmance of the judgment.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, PARKER, MINTURN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 12.

*For reversal*—None.