In the Matter of EVELYN HILL, Trading as AARON HILL, Petitioner, against LAZARUS JOSEPH, as Comptroller of the City of New York, Respondent.

Supreme Court, Special Term, New York County, January 14, 1954.

*Victor R. Wolder* for petitioner.

*Denis M. Hurley, Corporation Counsel (Stanley Buchsbaum* and *Morris L. Heath* of counsel), for respondent.

CORCORAN, J. This is a proceeding under article 78 of the Civil Practice Act to review two determinations of the comptroller of the City of New York which denied claims of the petitioner for refund of New York City sales and business taxes.

The petitioner operates a concession at the Statue of Liberty on Bedloe's Island (which is also known as Bedlows Island), where she sells souvenirs and food to persons visiting the Statue of Liberty. The sales tax is on the sale of souvenirs and the business tax is on the gross receipts of the business (Administrative Code of City of New York, ch. 41, tit. N; ch. 46, tit. B).

The petitioner claims that she is not subject to tax by the City of New York on the ground that Bedloe's Island is not within the territorial limits of New York, but is located in New Jersey.

Bedloe's Island is one of four islands (the others are Ellis, Oyster and Robin's Reef) lying in New York Bay. It has been in the possession of the Federal Government since 1800, under

a grant of cession from the State of New York (L. 1800, ch. 6; State Law, § 22, subd. 3). The United States Department of the Interior controls the operation of the island and the petitioner rents the concession from that department.

Prior to 1940, no State or municipality could impose taxes in a Federal area located in such State or municipality. In that year, Congress enacted the Buck Act which authorized States to impose taxes including the type collected in this case in any Federal area within a State to the same extent and with the same effect as though it was not a Federal area (U. S. Code, tit. 4, §§ 105, 106). Any Federal area, or any part of such area, which is located within the exterior boundaries of a State, is deemed to be a Federal area located within such State (see definitions, U. S. Code, tit. 4, § 110, subd. [e]).

The petitioner claims that Bedloe's Island is within the boundaries of the State of New Jersey and is subject to the taxing power of that State. The respondent claims that it is within the city and State of New York and is therefore within the taxing jurisdiction of this city. If Bedloe's Island is located within the territorial limits of the State of New Jersey then, of course, neither the city nor the State of New York has the right to tax the petitioner under the Buck Act.

For reasons which I will hereafter state, I find that Bedloe's Island is a part of the State of New York, located within the geographic boundaries of the city of New York, and that the city properly imposed the sales and business taxes.

Prior to 1833, the State of New York and the State of New Jersey had had several disputes concerning the boundary line between the two States. In an effort to settle these disputes, the two States appointed commissioners to prepare a compromise agreement. These commissioners, however, could reach no agreement (Public Papers of Daniel T. Tompkins, Governor of N. Y., 1807–1817, Messages from the Governors, Vol. 2). Commissioners were again appointed in 1826, or 1827, but once more the commissioners failed to agree.

The report, of these last commissioners to the New York State Senate in 1828, shows that the New Jersey Commissioners submitted as part of their own proposals on the boundary settlement, " that the islands called Bedlow's Island, Ellis Island, Oyster Island and Robin's Reef, to low water mark of the same, be held to be and remain within the exclusive jurisdiction of the state of New York." It was only after negotiations had broken down that the New Jersey Commissioners claimed for their State not only these islands but Staten Island as well.

The State of New Jersey then brought an action, in 1829, in the United States Supreme Court against the State of New York for fixation of the boundary line (3 Peters [28 U. S.] 461). The complaint makes interesting reading today. In it, New Jersey alleged that in colonial times New York had '' wrongfully and forcibly possessed herself of the said island called Staten Island and the other small islands in the dividing waters between the two States '' and that New Jersey was '' a feeble colony, and under a proprietary government * * * (and) could oppose no effectual resistance to the said encroachment of the State of New York, which was then under royal patronage.'' According to New Jersey's complaint, New York had had possession of Bedloe's Island for such a long time that New Jersey, '' for the sake of peace '', would not seek to disturb that possession. The claim of New Jersey was only to rights in the dividing waters. It appears, therefore, that the petitioner is making a claim of sovereignty for the State of New Jersey which that State itself did not make.

An agreement was finally entered into between New York and New Jersey in 1833. It was confirmed by New York by chapter 8 of the Laws of 1834, and by New Jersey on page 118 of the Laws of 1834. It was approved by Congress by Act of June 28, 1834 (4 U. S. Stat. 708, ch. 126). Article First of the agreement (State Law, § 7) fixes as part of the boundary line the middle of the Hudson River and of the Bay of New York, and concludes with the clause '' except as hereinafter otherwise particularly mentioned.''

In the absence of an exception, Bedloe's Island would have gone to New Jersey, since it is on the New Jersey side of the boundary line. Article Second, which is the exception, reads as follows: '' The state of New York shall retain its present jurisdiction of and over Bedlow's and Ellis' Islands, and shall also retain exclusive jurisdiction of and over the other islands lying in the waters above mentioned, and now under the jurisdiction of that state.''

The intention seems clearly expressed that New York should retain whatever interest it had in these islands prior to the agreement. The Court of Appeals, in *People* v. *Central R. R. Co. of N. J.* (42 N. Y. 283, appeal dismissed 79 U. S. 455), construed the 1833 agreement and held that the islands in Upper New York Bay never passed to the State of New Jersey. The court, in referring to Article Second, said at page 294: ''This article fulfills the office of an *exception,* as it takes out something embraced in the general description, and which would

otherwise be granted, and explains and gives point and force to this exception in article first. These islands are situate west of the boundary line fixed by the first article of said convention, and would have passed to New Jersey without this exception. The first article simply fixes the boundary line between the States, and this exception takes from the territory thus assigned to New Jersey, these islands, and limits and restricts the boundary line, so far as the same would otherwise give them to New Jersey.''

The petitioner claims that the 1833 interstate agreement gave Bedloe's Island to New Jersey because the island lies west of the middle of New York Bay and the clause of exception in the agreement retaining in the State of New York its '' present jurisdiction of and over Bedloe and Ellis Island '' refers only to jurisdiction to serve civil and criminal process. This contention is based on the language in the grant of cession of Bedloe's Island from the State of New York to the Federal Government. In 1794, the City of New York granted Bedloe's Island to the State of New York for the construction of fortifications. As previously stated, the State of New York then ceded the island to the United States by chapter 6 of the Laws of 1800. In that grant of cession it was expressly provided that the State of New York should continue to have the right to serve civil or criminal process. From this, the petitioner argues to her conclusion that the '' present jurisdiction '' clause in the 1833 agreement between New York and New Jersey meant jurisdiction to serve process and nothing else.

This argument loses sight of the fact that the 1800 grant of cession was from the State of New York to the Federal Government — not to the State of New Jersey. That State was never a party to the 1800 grant of cession and gained no rights under it. There is nothing to support the assumption that the interstate commissioners intended that the 1833 agreement should incorporate the language of the 1800 grant of cession. If they intended the words '' present jurisdiction '' to have the limited meaning claimed by the petitioner, they should have said so.

The interstate commissioners who drafted the 1833 agreement permitted the State of New York to retain exclusive jurisdiction over Bedloe's Island. They realized that Bedloe's and Ellis' Islands were then under Federal jurisdiction to some extent. The phrase '' present jurisdiction '', in my opinion, was used with that situation in mind rather than as a limitation on the State of New York by the State of New Jersey. This conclusion finds support not only in the language of the agreement but in

the fact that the State of New Jersey could not have intended limitations on the jurisdiction of the State of New York when no jurisdiction whatsoever was given to the State of New Jersey. The commissioners were describing a factual situation in terms understood by them at the time. They were not imposing restrictions.

New York State legislation prior to 1833, when the interstate agreement was made, and the absence of such legislation in New Jersey, indicate that the then jurisdiction of the State of New York was not considered to be limited to the service of process. Chapter 63 of the Laws of 1788, divides the State into 16 counties and describes the County of New York as including Bedlows Island, and chapter 18 of the Laws of 1791, divides the City of New York into 7 wards and places Bedlows Island in the first ward. Even after the 1800 grant of cession to the Federal Government, successive laws of New York in 1803 (ch. 29), in 1817 (ch. 285), and in 1825 (ch. 195) always placed Bedlows Island in the city of New York. The commissioners who drafted the 1833 agreement between the States certainly must have been aware of the fact that the island, at least in a political sense, was under the jurisdiction of this State when its residents voted in the city of New York. The Revised Statutes of New York (1829, ch. 2, tit. 1, § 2, subd. 5), describe the County of New York as including Bedlows Island. Section 1 of chapter 2 of title 5 describes the City of New York as containing all that part of the State within the County of New York and by subdivision 1 places Bedloe's Island in New York City.

The grant of Bedloe's Island to the State of New York by the City of New York in 1794, contained a provision that if the island were not used for the purpose of constructing fortifications, it was to revert to the City of New York. The grant of cession from New York State to the United States recited that the State had spent large sums of money fortifying the island. While there was no reversion provision in the grant of cession, it seems clear that it was in contemplation of the Federal Government maintaining the island as a fort, and the Government did maintain it for that purpose under the name of Fort Wood. It seems equally clear that, if the United States wanted to discontinue maintaining the island or wanted to abandon title to it, it would recede it to New York rather than to New Jersey. This is particularly true when we consider that the grant from the City of New York to the State had a reversionary provision. In a sense, the Buck Act is a release of part of the Federal

jurisdiction. It must have been foreseen that a release of Federal jurisdiction would accrue to the State of New York.

If I were to accept the petitioner's claim that the words "present jurisdiction" in the 1833 interstate agreement meant only the jurisdiction to serve process without reservations, then neither State would get the benefits of the Buck Act, for there is no showing that Bedloe's Island is in New Jersey. If the Buck Act was intended to benefit the States, and it obviously was, the benefits should accrue to a State which had some jurisdiction rather than to one which had no jurisdiction at all.

Since the State of New York has the power of taxation over Bedloe's Island, as far as the Buck Act gives it such power, then the City of New York, a duly constituted taxing authority, may exercise its delegated powers of taxation over the same area. There is no question but that if Bedloe's Island is in New York State, it is located in the city of New York by express provisions of our State laws. (New York City Consolidation Act, L. 1882, ch. 410, § 1; Administrative Code of City of New York, by § 2–1.0, subd. 1; L. 1937, ch. 929, as amd. by L. 1940, ch. 484. See, also, New York City Charter, §§ 1, 2.)

I hold, therefore, that Bedloe's Island is within the territorial boundaries of the city and State of New York and that the taxes were properly collected.

The petition is denied.