Terry COLLINS, Plaintiff,

v.

**PROMARK PRODUCTS, INC., Defendant and Third-Party Plaintiff,**

v.

**UNITED STATES of America, Third-Party Defendant.**

**No. 87 Civ. 2411 (WK).**

United States District Court, S.D. New York.

April 8, 1991.

Sarah Thomas, Asst. U.S. Atty., U.S. Attorney's Office for S.D.N.Y., for third-party defendant.

Richard A. Tanner, Cedar Grove, N.J., for defendant and third-party plaintiff.

Kenneth Dalton, Sutera Siracuse & Sutera, New York City, for plaintiff.

## OPINION AND ORDER

WHITMAN KNAPP, Senior District Judge.

In this personal injury case, third-party defendant United States (the "government") moves for summary judgment. For reasons that follow, the motion is denied.

## BACKGROUND

On August 29, 1986, plaintiff Terry Collins, an employee of the government's National Park Service, was injured on Ellis Island while using a stump grinder manufactured by defendant Promark Products, Inc. Since the accident, plaintiff has received workers' compensation benefits pursuant to the Federal Employees' Compensation Act, 5 U.S.C. § 8101 et seq.

In February 1987, plaintiff commenced the main action against defendant Promark Products, Inc., alleging various products liability causes of action. On May 1, 1989, Promark impleaded the government, alleging, among other things, that it had negligently maintained the machine and failed adequately to instruct plaintiff on how to use it. All parties agree that the allegedly negligent acts of the government took place on either of two areas on Ellis Island: "Island 2" or the "Festival Lawn". Both of these areas lay submerged under water until 1899 and 1922, respectively, when the government filled them in to increase Ellis Island's size.

## DISCUSSION

The government here contends the payment of workers' compensation benefits to the plaintiff bars the third-party action against it. It arrives at this conclusion by way of the Federal Tort Claims Act, which limits the government's liability to "those torts committed by government employees 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the [tortious] act or omission occurred.'" *Akutowicz v. U.S.* (2d Cir.1988), 859 F.2d 1122, 1125 (quoting 28 U.S.C. § 1346(b)). The government asserts that "the law of the place where the [tortious] act or omission occurred" is the law of New Jersey rather than of New York.

The distinction is critical. Under New Jersey law, the third-party action would not lie because workmen's compensation is deemed to be the sole liability of an employer for an employee's work-related injury. *See Ramos v. Browing–Ferris Indus.* (1986), 103 N.J. 177, 510 A.2d 1152; *see also Welch v. Schneider National Bulk Carriers* (D.N.J.1987), 676 F.Supp. 571. New York, however, does not so limit an employer's liability. *See Dole v. Dow Chemical Co.* (1972), 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288. Thus, the issue of which law governs "Island 2" and the "Festival Lawn" is determinative of the instant motion.

Although we have been treated to a host of historical documents tracing the title of Ellis Island as between the government on the one hand and each of the two states on the other, we find dispositive an agreement entered into between the two states in 1833 and consented to by Congress the following year. As Congress noted, the agreement was entered into "for the purpose of agreeing upon and settling the jurisdiction and territorial limits of the two states." Act of June 28, 1834, art. 1, ch. 126, 4 Stat. 708, 709.

The first article of the agreement sets as the boundary line between the states the mid-line of the waters that separate them. *Id.* The second article expressly reserves to New York state "its present jurisdiction" over Ellis Island and provides that New York "shall also retain exclusive jurisdiction of and over the other islands lying in the waters above mentioned and now under the jurisdiction of that state." *Id.* The third article reads:

The state of New York shall have and enjoy exclusive *jurisdiction* of and over all the waters of the bay of New York; and of and over all the waters of Hudson river lying west of Manhattan Island ... subject to the following rights of *property* and of *jurisdiction* of the state of New Jersey, that is to say:

1. The state of New Jersey shall have the exclusive right of *property* in and to the land under water lying west of the middle of the bay of New York, and west of the middle of that part of the Hudson River which lies between Manhattan Island and New Jersey.

2. The state of New Jersey shall have the exclusive *jurisdiction* of and over the wharves, docks, and improvements, made and to be made on the shore of the said state ...

3. The state of New Jersey shall have the exclusive right of regulating the fisheries on the westerly side of the middle of the said waters, *Provided*, That the navigation be not obstructed or hindered. (emphasis, except for the word "Provided", supplied).

Thus, although the compact divides the states down the middle of the waterways, it reserves to New York the exclusive jurisdiction over those waterways, while at the same time recognizing certain "rights of property and of jurisdiction" that belong to New Jersey.

The two areas at issue here—which, like the rest of Ellis Island, are situated on the New Jersey side (*i.e.* the westerly side) of the boundary—were, at the time of the compact, under water. Therefore, they come within the "exclusive jurisdiction" of New York as provided by the third article. None of the rights retained by New Jersey under the compact suggests a different conclusion. The first speaks only of "property" rights to land under water. We are here concerned only with New York's "jurisdiction", which is not defeated by the fact that New Jersey has property rights to the underwater lands upon which the areas in question were built. The second right—as to "jurisdiction" over improvements made on New Jersey's shore—has no application here. Finally, the third—the conditional

right of regulating fisheries—does not negate the compact's general grant of "jurisdiction" to New York, especially where that right could not, as a practical matter, be exercised on what is now dry land.

In light of the foregoing, we conclude that, for the purposes of the Federal Tort Claims Act, New York law applies to the question of whether or not an action may lie against the government. We accordingly deny the government's motion.

## CONCLUSION

The government's motion for summary judgment is denied.

SO ORDERED.