**Terry COLLINS, Plaintiff,**

**v.**

**PROMARK PRODUCTS, INC.,
Defendant–Third–Party
Plaintiff–Appellee,**

**United States of America, Third–
Party Defendant–Appellant.**

**No. 285, Docket 91–6145.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 11, 1991.

Decided Feb. 3, 1992.

Kenneth M. Dalton, Sutera, Siracuse & Sutera, New York City, for plaintiff.

Sarah H. Thomas, Sp. Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., Marla Alhadeff, Asst. U.S. Atty.), for third-party defendant-appellant.

Richard A. Tanner, Cedar Grove, N.J., for defendant-third-party plaintiff-appellee.

Robert J. Del Tufo, Atty. Gen. of New Jersey, Edward J. Dauber, Asst. Atty. Gen., William E. Andersen, Dept. of Law & Public Safety, Div. of Law, Richard J. Hughes, Trenton, N.J., for amicus curiae— State of N.J.

John W. McConnell, Asst. Atty. Gen. of New York, Dept. of Law, State of N.Y., Albany, N.Y., Peter H. Schiff, Deputy Sol. Gen., State Atty. General's Office, Albany, N.Y., for amicus curiae—State of N.Y.

Before MINER and MAHONEY, Circuit Judges, and McKENNA, District Judge.*

MINER, Circuit Judge:

Third-party defendant-appellant, United States of America ("the government") ap-

---

* Hon. Lawrence M. McKenna, of the United States District Court for the Southern District of   New York, sitting by designation.

peals by permission from an order entered in the United States District Court for the Southern District of New York (Knapp, J.) denying its motion for summary judgment dismissing the third-party claim of third-party plaintiff-appellee Promark Products, Inc. ("Promark"). The action was commenced by plaintiff Terry Collins to recover for personal injuries he sustained in the use of an allegedly defective product manufactured by Promark. The accident occurred at Ellis Island, where Collins was employed by the government. Promark impleaded the government in the action, asserting various claims of negligence in its third-party complaint.

In the motion for summary judgment seeking dismissal of the third-party complaint, the government contended that a third-party action was not permissible under applicable New Jersey law. Promark argued that New York law, allowing a third-party action to proceed under the circumstances revealed here, must be applied. The issue before the district court was whether the place where the accident occurred, a previously submerged portion of Ellis Island, is subject to the jurisdiction of the State of New York or the State of New Jersey for the purpose of applying relevant tort law. The district court, interpreting the provisions of a Compact ratified by the legislatures of the two states and approved by Congress in 1834, decided that New York law is applicable. We agree, but on a slightly different analysis.

## BACKGROUND

Ellis Island in the bay of New York is best known as the gateway through which millions of immigrants entered the United States at the turn of the century. It is estimated that the ancestors of 40% of all Americans came through Ellis Island, which has been described as "a shrine to the nation's immigrant history and ethnic diversity." Robert Hanley, *Ellis Is. Demolition Debate: What Is Not Worth Saving?* N.Y. Times, Dec. 19, 1991, at B7. Buildings used by the Immigration Service to process the new arrivals have been restored through private donations and public

funds and evoke memories of those who left their native lands to become permanent parts of the American mosaic. *Id.* Now administered by the National Park Service, Ellis Island continues to remind us of the hope that has drawn (and continues to draw) people to our shores from throughout the world and of the responsibility of each American to keep that hope alive.

It appears that the place now known as Ellis Island was included in the grant of the territory known as New Netherlands transferred by Charles II, King of England, to the Duke of York on March 12, 1664. Title to the Island subsequently was granted to Captain William Dyre by the colonial governor of New York and devolved through various mesne conveyances to Samuel Ellis and his heirs. The transfers of title were recorded in accordance with New York law in the Register of New York County. The Island was part of New York State and New York County in the late 18th Century and was subject to taxation by the City of New York. Commencing in 1795, the State of New York appropriated and expended substantial sums of money to construct military fortifications on Ellis Island and occupied it with military staff. On March 18, 1808, the New York legislature authorized the cession of Ellis Island to the federal government for fortification purposes. Ultimately, Governor Tompkins of New York, following acquisition of the Island by condemnation, executed and delivered a deed, dated June 30, 1808, conveying to the United States all of the right, title and interest of the State of New York in and to the Island.

Following a dispute between the states of New York and New Jersey, commissioners representing both states in 1833 entered into a Compact to define the jurisdictional and territorial limits of each state in the New York harbor. The Compact was ratified by the New York and New Jersey legislatures and was approved by Congress on June 28, 1834. Article I of the Compact established the boundary line between the states at a point in the middle of the Hudson River and New York Bay, with New Jersey to the west, and New York to the east, of the line. Article II provided that

"[t]he state of New York shall retain its present jurisdiction of and over ... Ellis' island[ ], and shall also retain exclusive jurisdiction of and over the other islands lying in the waters above-mentioned, and now under the jurisdiction of that state." Article III of the Compact provided as follows:

The state of New York shall have and enjoy exclusive jurisdiction of and over all the waters of the bay of New York, and of and over all the waters of Hudson river, lying west of Manhattan island, and to the south of the mouth of Spuyten Duyvel creek, and of and over the lands covered by the said waters to the low-water mark on the westerly or New Jersey side thereof, subject to the following rights of property and jurisdiction of the state of New Jersey, that is to say:

1. The state of New Jersey shall have the exclusive right of property in and to the land under water, lying west of the middle of the bay of New York and west of the middle of that part of the Hudson river which lies between Manhattan island and New Jersey.

2. The state of New Jersey shall have the exclusive jurisdiction of and over the wharves, docks and improvements made and to be made on the shore of the said state, and of and over all vessels aground on said shore, or fastened to any such wharf or dock, except that the said vessels shall be subject to the quarantine or health laws, and laws in relation to passengers of the state of New York, which now exist or which may hereafter be passed.

3. The state of New Jersey shall have the exclusive right of regulating the fisheries on the westerly side of the middle of the said waters; provided, that the navigation be not obstructed or hindered.

After the Civil War, the War Department determined that a military installation no longer was required at Ellis Island. In 1890, it transferred the Island to the Treasury Department for use as an immigration station.[1] In order to enlarge the Island for that use, the government undertook several landfill projects between the years 1890 and 1934. As a result, the size of Ellis Island ultimately was increased from approximately three acres to approximately 27.5 acres. Plaintiff Collins was injured in an accident that occurred on a portion of the Island created by landfill. There is no question that the *locus in quo* lies on the west, or New Jersey, side of the boundary line between New York and New Jersey established by the 1833 Compact. All of Ellis Island lies on the west side of the line.

On April 29, 1986, when the accident occurred, Mr. Collins was engaged in the performance of his duties as a maintenance laborer employed by the government at Ellis Island. He was operating a stump grinding machine manufactured by Promark and was struck in the foot by a revolving blade of the machine. The resulting injuries were so severe as to require a below the knee leg amputation. The place of the accident was a location known as the "Festival Lawn," a previously submerged area created by landfilling between 1920 and 1922.

Plaintiff Collins filed this action against Promark to recover damages for the personal injuries he sustained in the accident. His complaint pleads claims sounding in negligence, breach of warranty and strict liability in tort. Promark has impleaded the government in a third-party action, alleging failure to provide a safe workplace; failure to provide safety apparel and appliances; negligent lack of training in the use of power equipment; and negligent supervision of Mr. Collins and those who were his immediate supervisors. Promark seeks contribution from the government for any sums adjudged to be due the plaintiff in the underlying action.

The denial of the government's motion for summary judgment dismissing the

1. The immigration station opened on January 1, 1892, admitting 700 immigrants on its first day of operations. 17,000,000 immigrants were admitted through Ellis Island between 1892 and 1954. By Joint Resolution, Congress designated the centennial of the opening of the immigration station, January 1, 1992, as "National Ellis Island Day," noting that Ellis Island was reopened in the fall of 1990 as a historic site representing "the largest historic renovation project in the history of the United States." *See* Pub.L. No. 102–177, 105 Stat. 1226 (1991).

third-party complaint gives rise to this appeal. The motion was based on the government's contention that the third-party action is barred by the New Jersey Workers Compensation Law, which limits an employer's liability for work-related accidents to benefits provided as a consequence of statutory requirements for the payment of compensation to injured workers. *See Ramos v. Browning–Ferris Industries*, 103 N.J. 177, 184, 510 A.2d 1152, 1155 (1986); *Welch v. Schneider National Bulk Carriers*, 676 F.Supp. 571, 579 (D.N.J.1987). The government has been paying such benefits to Mr. Collins in accordance with the provisions of the Federal Employees Compensation Act, 5 U.S.C. § 8101, *et seq.* Promark opposed the motion for summary judgment with the argument that the Workers Compensation Law of New York is no bar to third-party actions in cases such as this. *See Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972). The dispositive issue on the motion, therefore, was whether the laws of New Jersey or the laws of New York are to be applied in this case. The district court examined the 1833 Compact and decided that New York law governs.

In an Opinion and Order dated April 8, 1991, 763 F.Supp. 1204 (S.D.N.Y.1991), the district court found that the place of the accident was "within the 'exclusive jurisdiction' of New York as provided by the third article" of the Compact, and that New York's jurisdiction "is not defeated by the fact that New Jersey has property rights to the underwater lands upon which the areas in question were built." *Id.* at 1206. The government sought reconsideration of the district court's determination, arguing that the Compact gives New Jersey more than mere ownership of the previously submerged lands. The court upon reconsideration reviewed additional authorities submitted by the government but adhered to its original decision in an Opinion and Order dated April 12, 1991, 763 F.Supp. 1206 (S.D.N.Y.1991). Referring to the jurisdiction conferred upon New York for the exercise of police powers over the waters on the New Jersey side of the boundary line between the two states, the district court

observed that "a state's power to impose criminal penalties on an individual would include the less intrusive power to have that individual's tortious conduct governed by the same state's law." *Id.* at 1208. The district court certified its orders pursuant to 28 U.S.C. § 1292(b), and we granted permission to file this appeal.

## DISCUSSION

The Federal Tort Claims Act, upon which the third-party action is grounded, permits suits against the government for the negligence of government employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see Akutowicz v. United States*, 859 F.2d 1122, 1125 (2d Cir.1988). We agree with the district court that the third-party action may go forward in accordance with the law of New York, which is the law of the place where the accident occurred and which permits actions for contribution against employers under circumstances such as those revealed here. The principal basis for our decision is Article II of the Compact, which clearly provides that "[t]he state of New York shall retain its present jurisdiction of and over … Ellis' island[ ]."

While the government contends that "present jurisdiction" refers to the 3–acre version of Ellis Island as it stood in 1833 and not to the 27.5–acre version as it stands today after years of landfilling, the basis for this contention is not clear. The language of the Compact concerns power over the *entity* known as Ellis Island and in no way implicates the size of the entity. It was the stated intention of the Commissioners that whatever matters were subject to the jurisdiction of New York at the time the Compact was entered into would continue thereafter to be subject to the jurisdiction of New York. Surely, the Commissioners must have contemplated that the territory of the Island might over the years decrease or increase as the result of natural or artificial forces. This is evidenced by the fact that language of size forms no

part of the structure of the Compact as it specifically relates to Ellis Island.

The great Holmes made passing reference to the "present jurisdiction" language in the course of his opinion for the Supreme Court in *Central Railroad v. Jersey City*, 209 U.S. 473, 28 S.Ct. 592, 52 L.Ed. 896 (1908). That case did not involve a question of jurisdiction over Ellis Island but did present the question of the power of the State of New Jersey to tax lands lying under New York Bay on the New Jersey side of the boundary line established between the two states. It was clear in that case that New Jersey had the authority to tax the underwater lands in consequence of its exclusive right of property in the submerged area, a right which the Court said was "to be taken primarily to refer to ultimate sovereign rights, in pursuance of the settlement of the territorial limits." *Id.* at 478, 28 S.Ct. at 593. However, Justice Holmes went on to say that

the often-expressed purpose of the appointment of the commissioner[s] and of the agreement to settle the territorial limits and jurisdiction must mean, by territorial limits, sovereignty, and by jurisdiction something less. It is suggested that jurisdiction is used in a broader sense in the second article, and that may be true so far as concerns ... Ellis island[ ]. But the provision there is that New York shall retain its "present" jurisdiction over [Ellis Island], and would seem on its face simply to be intended to preserve the *status quo ante*, whatever it may be.

*Id.* at 479, 28 S.Ct. at 593.

Accordingly, and obviously, the situation of Ellis Island is much different from the situation of the lands under the waters of the Bay on the New Jersey side of the boundary. The submerged lands west of the line established by the Compact are designated as property of New Jersey and thus are subject to its sovereignty, including the sovereign power of taxation. The waters above the lands are regulated by New York, which has exclusive jurisdiction over all that transpires in those waters. Ellis Island in its entirety is subject only to the jurisdiction of New York, under a specific provision of the Compact designed to preserve the *status quo ante* of New York jurisdiction.

For more than three centuries, New York as colony and state has exercised jurisdiction over Ellis Island. The transfer of title to the government effected little change. After the transfer, New York continued to regard Ellis Island as part of the City, County and State of New York, without objection by the government or the State of New Jersey. The "present jurisdiction" language only acknowledged that government ownership carried with it some limited form of federal jurisdiction. It did *not* acknowledge any jurisdiction on the part of New Jersey, which never exercised any authority or control of any kind with respect to the Island. *See Hill v. Joseph*, 205 Misc. 441, 445, 129 N.Y.S.2d 348, 351 (N.Y.Sup.Ct.1954) ("[The commissioners] realized that Bedloe's and Ellis' Islands were ... under Federal jurisdiction to some extent. The phrase 'present jurisdiction', in my opinion, was used with that situation in mind rather than as a limitation on the State of New York by the State of New Jersey.").

Ellis Island remains a part of New York by acknowledgment of the government and without objection (except in this case) by New Jersey. It has been a component of New York Congressional, State Senate and Assembly districts for more than one hundred fifty years. As part of New York County, it lies within the territorial jurisdiction of the United States District Court for the Southern District of New York, 28 U.S.C. § 112, and of New York's first judicial district, N.Y. Const. art. VI, § 6; *see Rettig v. John E. Moore Co.*, 90 Misc. 664, 154 N.Y.S. 124 (N.Y.App.Term 1915) (civil suit for assault committed "upon government property at Ellis Island"). The government treats the entire area of Ellis Island as part of Manhattan for census purposes and has assigned a New York postal zip code to the Island. Those who have resided on Ellis Island, both before and after the Compact, have been treated as citizens of New York. In order to avoid liability in this case, the government as-

serts for the first time that certain portions of Ellis Island belong to New Jersey. However, long acceptance of the status quo counts for a great deal in matters of territorial disputes between states. *See, e.g., Georgia v. South Carolina,* —— U.S. ——, 110 S.Ct. 2903, 2914, 111 L.Ed.2d 309 (1990); *Arkansas v. Tennessee,* 310 U.S. 563, 569–71, 60 S.Ct. 1026, 1030–31, 84 L.Ed. 1362 (1940); *Michigan v. Wisconsin,* 270 U.S. 295, 306–08, 46 S.Ct. 290, 293–94, 70 L.Ed. 595 (1926); *Indiana v. Kentucky,* 136 U.S. 479, 511–12, 10 S.Ct. 1051, 1054–55, 34 L.Ed. 329 (1890). We think that it counts for a great deal here also, even though neither New York nor New Jersey is a party to the action. Noteworthy in this regard is the fact that New Jersey lays its territorial claim, not by invoking the original jurisdiction of the Supreme Court in accordance with paragraph 2, section 2, article III of the United States Constitution, but by filing an *amicus* brief in this case.

The impracticability of the government's position is apparent from an examination of the Historical Development Map attached as an Appendix to this opinion. The land-filled area surrounds the original Ellis Island on all sides, and the boundary line between the original portion of the Island and the portion created by fill is haphazard and uneven. To restrict the application of New York law to the enclave described on the Map as "Original Island" and apply New Jersey law outside the enclave would, in the words of the district court, "mak[e] it necessary for every person injured on Ellis Island to engage in litigation to establish the exact spot on the island where the injury was sustained." The government notes that the National Park Service administers many areas that are subject to the jurisdiction of one or more states and gives as examples Assateague Island National Seashore, 16 U.S.C. § 459f, and the Appalachian National Scenic Trail, 16 U.S.C. § 1244(a). There is nothing to indicate, however, that these national park areas or any others have boundary line configurations, delineating state jurisdictions, that are as strange or as difficult to iden-

tify as those the government urges us to recognize here.

Finally, the cases cited by the government in support of its contention that the Compact gives New Jersey jurisdiction over the formerly submerged sections of Ellis Island, for purposes of applying its tort law, give no comfort to its position in light of our analysis of the Compact. The cases all deal with jurisdiction and property in regard to harbors and submerged lands and with the exercise of police powers over the waters of the bay and river. None pertains to jurisdiction over the singular territory known as Ellis Island. In *State v. Babcock,* 30 N.J.L. 29 (1862), an opinion written by Judge Lucius Elmer, who had served as one of the Commissioners appointed to negotiate the Compact, the court held that New York had jurisdiction to seek the removal of obstructions to navigation in the Hudson River. Judge Elmer noted that the Commissioners intended to give police and quarantine powers over the entire River to New York, with New Jersey having "exclusive property in the soil to the middle of the river." *Id.* at 33–34.

In *People v. Central Railroad,* 42 N.Y. 283, *writ of error dismissed,* 79 U.S. (12 Wall.) 455, 20 L.Ed. 458 (1870), the New York Court of Appeals, reviewing the plain language of the Compact, came to the unexceptional conclusion that New York had no jurisdiction over the wharves and piers attached to the New Jersey shore. Neither that case nor any other case cited by the government interpreting the Compact deals with jurisdiction over filled-in lands in general or Ellis Island in particular. *See, e.g., Tennant v. State Board of Taxes,* 95 N.J.L. 465, 468–69, 113 A. 254, 255 (1921) (New Jersey could levy personal property tax against tugboat permanently moored in its waters); *Ferguson v. Ross,* 126 N.Y. 459, 463, 27 N.E. 954 (1891) (New York could prosecute for dumping dredged material close to New Jersey shore); *Preisler v. Velasquez,* 65 Misc.2d 703, 704–05, 318 N.Y.S.2d 977, 979 (N.Y.Sup.Ct.1971) (New York ordinarily has no jurisdiction of traffic accident occurring on New Jersey side of George Washington Bridge); *Kowalskie v. Merchants & Miners Transp.*

*Co.*, 76 N.Y.S.2d 699, 701 (N.Y.Sup.Ct.1947) (injuries to stevedores unloading vessel docked on New Jersey shore occurred within New Jersey boundaries even if claims arose after stevedores jumped into Hudson River adjacent to pier); *In re Gutkowski's Estate*, 135 N.J.Eq. 93, 103, 33 A.2d 361, 366 (1943) (estate of child killed in boating accident on New Jersey side of river should be distributed according to New Jersey law). The Compact does not provide for jurisdiction over lands created by fill. It does provide for jurisdiction over Ellis Island. New York is the jurisdiction provided.

## CONCLUSION

The law of New York is applicable to the claims asserted in this action. The order of the district court therefore is affirmed in all respects. The case is remanded to the district court, there to continue in the regular course.

## APPENDIX

**HISTORICAL DEVELOPMENT**
**1920 - 1936**
**ELLIS ISLAND**
STATUE OF LIBERTY NATIONAL MONUMENT
NEW YORK / NEW JERSEY