JOSE RAMOS AND CARMEN RAMOS, PLAINTIFFS-RESPONDENTS, v. BROWNING FERRIS INDUSTRIES OF SOUTH JERSEY, INC., DEFENDANT AND THIRD-PARTY PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, AND LAMINATING CORPORATION OF AMERICA, THIRD-PARTY DEFENDANT-APPELLANT AND CROSS-RESPONDENT.

Argued November 18, 1985—Decided July 8, 1986.

178

*Robert F. Colquhoun* argued the cause for appellant and cross-respondent (*Colquhoun & Colquhoun,* attorneys).

*Thaddeus J. Hubert, III,* argued the cause for respondent and cross-appellant (*Hoagland, Longo, Oropollo & Moran,* attorneys).

*Seymour Margulies* argued the cause for respondents (*Margulies, Margulies & Wind,* attorneys; *Jack Jay Wind,* on the letter brief).

The opinion of the Court was delivered by

POLLOCK, J.

On this appeal, we are asked to overturn the rule that an employer's liability for injuries sustained by an employee is restricted to the schedule of payments in the New Jersey Workers' Compensation Act, *N.J.S.A.* 34:15–1 to –127. The question is raised by a third-party tortfeasor that seeks contribution, common-law indemnification, or express indemnification

from the employer with respect to a judgment obtained by the employee against the tortfeasor.

While moving a drum of solid waste on the premises of his employer, Laminating Corporation of America (LCA), plaintiff Jose Ramos was injured when he tripped over a rut made by a solid waste hauler, Browning-Ferris Industries of South Jersey, Inc. (BFI). After recovering a workers' compensation award against LCA, Ramos sued BFI, which filed a third-party complaint against LCA.

On cross-motions by LCA and BFI, the Law Division granted summary judgment for LCA dismissing BFI's indemnification claim. Thereafter, the jury found BFI 75 percent and Ramos 25 percent negligent, and returned a verdict for $410,000 in favor of Ramos, which the court molded to $307,500.

The Appellate Division affirmed the judgment for Ramos, but reversed the summary judgment for LCA, and ordered LCA to indemnify BFI from liability for Ramos's injuries. 194 *N.J.Super.* 96 (1984).

We granted both LCA's petition for certification and BFI's cross-petition, 101 *N.J.* 211 (1985), which asserted that if BFI was not entitled to express indemnification, it was entitled to implied indemnification or contribution from LCA. We find that LCA did not agree to indemnify BFI for BFI's own negligence, and that BFI's claims against LCA for contribution and implied indemnification are barred by the Workers' Compensation Act, *N.J.S.A.* 34:15–8. Consequently, we reverse the judgment of the Appellate Division.

–I–

LCA and BFI executed a standard BFI "service agreement," pursuant to which BFI agreed to furnish LCA with certain equipment identified as a solid waste compactor, a large steel container for the deposit of solid waste.

The agreement between BFI and LCA provided, in relevant part:

> Customer [LCA] acknowledges that it has care, custody and management of equipment owned by the Company [BFI] and accepts responsibility for the equipment and its contents except when it is being physically handled by employees of the Company. Therefore, Customer expressly agrees to defend, indemnify and hold harmless the Company from and against any and all claims for loss of or damage to property, or injury to or death of person or persons resulting from or arising in any manner out of Customer's use, operation or possession of the equipment furnished under this Agreement.
>
> Customer acknowledges that Company shall not be liable for any damage to pavement or driving surface resulting from its trucks servicing an agreed upon area.

LCA's employees would place solid waste in the container and BFI's trucks would remove, empty, and return the container to LCA's premises. In the course of these activities, BFI gouged holes or ruts in the ground around the containers.

On January 11, 1979, Ramos was wheeling a cart with a 400-pound drum through LCA's yard to a compactor. The cart caught in a snow-covered hole, and the drum rolled onto his leg, thereby causing serious personal injuries.

Ramos sued BFI, which filed a third-party complaint against LCA. The Law Division found that the indemnity clause did not obligate LCA to indemnify BFI from BFI's own negligence and that BFI was not entitled to implied indemnification or contribution. The Appellate Division disagreed with the Law Division's interpretation of the indemnification clause, finding that LCA agreed to indemnify BFI in all instances except "when the [container] is being physically handled by the employees of [BFI]." Additionally, the court stated that the Workers' Compensation Act did not bar enforcement of such an express indemnification agreement against the employer. 194 *N.J.Super.* at 101–02. The court ruled further that BFI owed plaintiff a duty with respect to placing the containers on LCA's premises and that

> [t]he jury could have found that BFI acted unreasonably in not insisting on a safer location for the container or in failing to reduce the risk of dangerous ruts by spreading and compacting or advising LCA to spread and compact 'quarry blend bluestone' over the soil near the container. Plaintiff's expert testified that bluestone is used for that purpose. [*Id.* at 104.]

Finally, the Appellate Division rejected BFI's contention that the Law Division had erred in not submitting to the jury the issue of LCA's comparative negligence even though LCA is immune from liability to the plaintiff because of the bar of the Workers' Compensation Act. The court found that because the employer is immune, "it cannot be a party to a negligence action." *Id.* at 107.

–II–

With respect to work-related injuries, the rights and duties of an employee and employer, as well as those of the employer and a third-party tortfeasor, are governed by the Workers' Compensation Act, *N.J.S.A.* 34:15–1 to –127. That Act is built upon the principle that it provides the exclusive remedy against the employer for a work-related injury sustained by an employee. *N.J.S.A.* 34:15–8; *Estelle v. Board of Educ. of Red Bank,* 14 *N.J.* 256 (1954). Fundamental to the Act is the premise that by accepting the benefits provided by its schedule of payments, the employee agrees to foresake a tort action against the employer. *Morris v. Hermann Forwarding Co.,* 18 *N.J.* 195, 197–98 (1955).

At common law, each joint tortfeasor was jointly and severally liable for all the damage caused by their wrongful acts. W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser & Keeton on Torts* § 52 at 345, 347–48 (5th ed. 1984) (Prosser & Keeton); F. Harper and F. James, *Law of Torts* § 10.1 at 692 (1956). Therefore, under common-law principles, even if LCA had contributed to the causation of plaintiff's accident, BFI would remain jointly and severally liable to plaintiff for the entire judgment.

To relieve the inequity of imposing the entire burden on one of several joint tortfeasors, the Legislature enacted the Joint Tortfeasors Contribution Law, *N.J.S.A.* 2A:53A–1 to –5. Although that law does not diminish the liability of a joint tortfeasor to the plaintiff, it provides a means for one joint

tortfeasor to obtain contribution from another. Specifically, the law provides:

> Where injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share; but no person shall be entitled to recover contribution under this act from any person entitled to be indemnified by him in respect to the liability for which the contribution is sought. [ *N.J.S.A.* 2A:53A–3.]

The term "joint tortfeasors" is defined to mean "two or more persons jointly or severally liable in tort for the same injury." *N.J.S.A.* 2A:53A–1.

At the time the Legislature enacted the Joint Tortfeasors Contribution Law, as at present, the Workers' Compensation Act provided that the agreement, express or implied, between employer and employee to accept the Workers' Compensation Act "shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in this article * * *." *N.J.S.A.* 34:15–8. Thus, the Workers' Compensation Act removes the employer from the operation of the Joint Tortfeasors Contribution Law. Because the employer cannot be a joint tortfeasor, it is not subject to the provisions of the Joint Tortfeasors Contribution Law, and a third-party tortfeasor may not obtain contribution from an employer, no matter what may be the comparative negligence of the third party and the employer. *Schweizer v. Elox Div. of Colt Indus.,* 70 *N.J.* 280, 288 (1976); *Farren v. New Jersey Turnpike Auth.,* 31 *N.J. Super.* 356, 360–61 (App.Div.1954); *Arcell v. Ashland Chem. Co., Inc.,* 152 *N.J.Super.* 471, 483–85 (Law Div.1977); *Ruvolo v. United States Steel Corp.,* 139 *N.J.Super.* 578, 583 (Law Div.1976); *Yearicks v. City of Wildwood,* 23 *N.J.Super.* 379, 382–83 (Law Div.1952); *Bertone v. Turco Prods., Inc.,* 252 *F.*2d

726, 730 (3d Cir.1958); *Cameron v. G & H Steel Service, Inc.*, 494 *F.Supp.* 171, 174–75 (E.D.N.Y.1980).

The New Jersey Rule is consistent with that of the great majority of jurisdictions, which hold that the exclusive-remedy provision of the Workers' Compensation Act precludes a claim for contribution against an employer whose concurring negligence contributed to the injury of an employee. *See* Larson, *Third-Party Action over against Workers' Compensation Employer,* 1982 *Duke L.J.* 483, 488–89, and cases collected *id.* at n. 17 (1982); Comment, "The Effect of Workers' Compensation Laws on the Right of a Third Party Liable to an Injured Employee to Recover Contribution or Indemnity from the Employer," 9 *Seton Hall L.Rev.* 238, 264 n. 157 (1978); Annot., 100 *A.L.R.*3d 350 (1980).

In some cases, holding the third-party tortfeasor solely responsible to the injured employee may seem unfair. Indeed, Professor Larson describes the issue of the effect of the exclusive-liability provision of the Workers' Compensation Act on the right of a third-party tortfeasor to recover contribution or indemnification from an employer whose negligence was a concurrent cause of the plaintiff-employee's injury as "[p]erhaps the most evenly-balanced controversy in all of compensation law * * *." 2A Larson, *Workmen's Compensation Law* § 76.11 at 14–561 (1982) (2A Larson).

A few jurisdictions have circumvented the bar of the workers' compensation law and allowed a third party some relief against the employer. These jurisdictions have adopted various approaches, each of which is analytically defective. In Minnesota, for example, third parties may seek contribution from a negligent employer up to the amount of the workers' compensation payment. *Lambertson v. Cincinnati Corp.,* 312 *Minn.* 114, 257 *N.W.*2d 679, 689 (1977). In reaching that result, the Minnesota court relied upon a Pennsylvania case, *Maio v. Fahs,* 339 *Pa.* 180, 14 *A.*2d 105, 110–11 (1940), which has since been overturned by a legislative amendment that abolished both

contribution and implied indemnity against the employer, *Pa. Stat.Ann.* § 303(b) (1974). This rule has been criticized for two reasons: first, because it depends on construing the phrase "liable in tort" in the contribution act "to mean not liable but guilty of having contributed to a tort;" second, because it imposes an arbitrary limitation on what otherwise would have been open-ended liability. 2A Larson, *supra,* § 76.34, at 14–610.

In North Carolina and California, workers' compensation payments are deducted from the employee's third-party recovery without reimbursing the employer for those payments. *See Brown v. Southern Ry. Co.,* 204 *N.C.* 668, 169 *S.E.* 419 (1933); *Witt v. Jackson,* 57 *Cal.*2d 57, 366 *P.*2d 641, 17 *Cal.Rptr.* 369 (1961). This approach, which rests on the notion that an employer should not profit by its own wrong, ignores the legislative edict that the employer should be reimbursed for any compensation benefits paid to the worker. *See* 2A Larson, *supra,* § 76.36 at 14–615. Adoption of this alternative would undermine *N.J.S.A.* 34:15–40, which entitles the employer to reimbursement for any compensation benefits paid to the employee from the judgment against the third-party tortfeasor. As a result, we have previously rejected the notion that a third-party tortfeasor's liability could be reduced by the amount of the workers' compensation award. *Schweizer v. Elox Div. of Colt Indus., Inc., supra,* 70 *N.J.* at 286–87.

Other attempts to circumvent the bar also fly in the face of the clear legislative expression in the workers' compensation statute. For instance, in *Dole v. Dow Chem. Co.,* 30 *N.Y.*2d 143, 282 *N.E.*2d 288, 331 *N.Y.S.*2d 382 (1972), the New York Court of Appeals allowed a third-party tortfeasor, Dow, to implead the employer and to recover what amounted to contribution according to the employer's degree of fault. *Dole* involved an action by a widow whose husband died as a result of on-the-job exposure to a toxic substance manufactured by Dow. Plaintiff alleged that Dow had failed to warn of the product's dangerous propensities. Dow, in turn, filed a third-

party complaint against the employer for "indemnity," alleging a failure to follow safety instructions. On these facts, the New York Court of Appeals held that liability would be apportioned according to each party's share of fault. *Id.*, 30 *N.Y.*2d at 153, 282 *N.E.*2d at 295, 331 *N.Y.S.*2d at 391–92. More importantly, the court did not restrict recovery to the amount of the employer's workers' compensation liability. *Id.*, 30 *N.Y.*2d at 152, 282 *N.E.*2d at 294, 331 *N.Y.S.*2d at 390–91. Instead, it dismissed the "exclusive-remedy" argument by pointing out that the third party was not suing the employer "on account of" the employee's injury, but for breach of an alleged independent duty owed to it by the employer. *Id.* Although an independent contractual obligation may extend from the manufacturer to the buyer, ordinarily no such contractual duty flows upstream from the buyer to the manufacturer. *See Arcell v. Ashland Chem. Co., Inc., supra,* 152 *N.J. Super.* at 491. By implying an obligation on the buyer to indemnify the manufacturer, the *Dole* decision is flawed. *See* 2A Larson, *supra,* § 76.84.

In *Skinner v. Reed-Prentice Div. Package Mach. Co.,* 70 *Ill.* 2d 1, 15 *Ill.Dec.* 829, 374 *N.E.*2d 437 (1977), *cert. denied,* 436 *U.S.* 946, 98 *S.Ct.* 2849, 56 *L.Ed.*2d 787 (1978), the Illinois Supreme Court ruled that a third party may maintain a claim for contribution as well as one for implied indemnity. With respect to the Illinois approach, Professor Larson has written:

Perhaps the most serious single blind spot in this otherwise understandable attempt to find an equitable compromise is the almost complete failure to give any weight to the component of exclusiveness of the compensation remedy. Here we have a field of law that is entirely statutory in origin, with an intricate legislative balancing of interests of employer, employee, and third party, one keystone of which is the exclusiveness principle. It is no light matter for a court, after 65 years, to take it on itself to alter drastically that balance of interests at the expense of one party to the system, however appealing to the court the final result might be. [2A Larson, *supra,* § 76.39 at 14–625 to –626.]

Although most courts that have addressed perceived inequities in the no-contribution rule have proposed changes affecting either the employer or the third party, one case suggests an alternative that would adversely affect the employee's recov-

ery. In *Murray v. United States*, 405 *F*.2d 1361 (D.C.Cir.1968), the plaintiff, a government employee, was injured in the fall of an elevator in a building leased to the federal government. He received workers' compensation under the Federal Employees' Compensation Act and then sued the building owner, Murray, who counterclaimed against the United States for contribution and indemnity. Although the court dismissed both claims, in *dictum* it announced that any judgment against Murray could be reduced by the employer's pro rata share to mitigate the effect of the workers' compensation bar.

The *Murray* rule has obtained little acceptance basically because "there is no rational relation between the fifty percent reduction in plaintiff's recovery in the interests of either the employee or the employer." 2A Larson, *supra*, § 76.37 at 14–620 to –621. The vice in the *Murray* credit rule is that it "shifts any inequity in the present system from the shoulders of the third-party tortfeasor to those of the injured employee." *Arcell v. Ashland Chem. Co., Inc., supra*, 152 *N.J.Super.* at 488.

All of these out-of-state decisions preceded the 1979 revision of the New Jersey Workers' Compensation Act, *L.* 1979, *c.* 283. At the time of that revision, the established case law in New Jersey was that a third party may not obtain contribution or implied indemnity from an employer. Notwithstanding occasional inequities to third parties, the Legislature did not make any change in the statutory scheme to permit recovery against the employer. As tempting as it may be in a given case to temper the exclusive-remedy provisions of the Workers' Compensation Act and to permit a third party to recover against the employer, we defer to the balance of interests as struck by the Legislature. The unmistakable intention of the Legislature was that the sole liability of an employer for a work-related injury of an employee was that provided in the Act.

■ Alternatively, BFI seeks indemnification, express or implied, from LCA. As a general rule, a third party may recover

on a theory of implied indemnity from an employer only when a special legal relationship exists between the employer and the third party, and the liability of the third party is vicarious. *Arcell v. Ashland Chem. Co., Inc., supra,* 152 *N.J.Super.* at 488–89; *Ruvolo v. United States Steel Co., supra,* 139 *N.J. Super.* at 583. Examples of the special relationship that will support a third party's claim for indemnification include that of principal and agent, *Hagen v. Koerner,* 64 *N.J.Super.* 580, 586–87 (App.Div.1960); bailor and bailee, 2A Larson, *supra,* § 76.51; and lessor and lessee, *Ruvolo v. United States Steel Co., supra,* 139 *N.J.Super.* at 584. *Cf. Cartel Capital Corp. v. Fireco of N.J.,* 81 *N.J.* 548, 565 (1980) (finding a valid claim for implied indemnity for retailer against manufacturer because of a design defect). In contrast, the relationship between vendor and vendee will not support a claim for implied indemnification by a third-party vendor against an employer-vendee. *Arcell v. Ashland Chem. Co., Inc., supra,* 152 *N.J.Super.* at 490–91; 2A Larson, *supra,* § 76.84 at 14–751. Arguably, implying indemnity on the basis of a purchase would be tantamount to creating a reverse warranty running from the employer-vendee to the third-party vendor. More to the point, implied indemnification, in the absence of an independent duty, would subvert the legislative intent to restrict the employer's liability to the Workers' Compensation Act.

In a case that arose outside the workers' compensation setting, this Court ruled that the owner of an airplane that crashed into a television tower could maintain an indemnity claim against the party in possession of the tower. *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.,* 32 *N.J.* 55, 79–81 (1960). The Court did not discuss its reason for allowing the claim in the absence of a special relationship between the indemnitor and the indemnitee. Instead, the opinion focused on the imposition of absolute liability on the airplane owner under *N.J.S.A.* 6:2–7 and stated that the owner was entitled to be indemnified if it was free from fault. To the extent that it recognized an indemnity claim in the absence of a special

relationship, the decision illustrates the proposition that "it is extremely difficult to state any general rule or principle as to when indemnity will be allowed and when it will not." Prosser & Keeton, *supra*, § 51, at 343. With work-related injuries, the Legislature has alleviated that difficulty by expressly granting the employer the right to seek indemnification from a third-party tortfeasor when the employer compensates an employee for injuries sustained in the work place. It would be inconsistent with the employer's statutory right of indemnification to require the employer, in the absence of an independent duty, to indemnify the third party, when the joint acts of both have caused the employee's injuries. As a result, allowing BFI's contract to haul solid waste to support a claim for implied indemnification against LCA would undermine the exclusive-remedy provision of the Workers' Compensation Act.

■ Ordinarily, a party who is at fault may not obtain indemnification for its own acts. *Cartel Capital Corp. v. Fireco of N.J., supra,* 81 *N.J.* at 566. As an exception to the general rule, one who in good faith and at the direction of another commits a tort is allowed indemnity against the person who caused him to act. Leflar, *Contribution and Indemnity Between Tortfeasors,* 81 *U.Pa.L.Rev.* 130, 150 (1932). Consistent with that premise, the Appellate Division in 1960 allowed indemnification against the employer and in favor of a co-employee who, while acting in good faith and pursuant to the employer's orders, negligently injured another employee. *Hagen v. Koerner, supra,* 64 *N.J.Super.* at 586–87. In the following year, the Legislature immunized employees who injure co-employees except when the injuries are intentionally caused. *N.J.S.A.* 34:15–8; *L.* 1961, *c.* 2, § 1. That amendment, in effect, removed the necessity for the exception insofar as co-employees are concerned. In the present case, the exception does not apply because BFI was not following LCA's instructions.

■ Nor does the distinction between "primary" negligence, on the one hand, and, on the other, "secondary" or

"vicarious" negligence provide the basis of relief for BFI. To be entitled to indemnification as one who is secondarily or vicariously liable, a party must be without fault. *See Cartel Capital Corp. v. Fireco of N.J., supra,* 81 *N.J.* at 566; *Schramm v. Arsenal Esso Station,* 124 *N.J.Super.* 135, 138–39 (App.Div.), *aff'd,* 63 *N.J.* 593 (1973); *Public Serv. Elec. & Gas Co. v. Waldroup,* 38 *N.J.Super.* 419, 432 (App.Div.1955); *Cacioppo v. Boeing Co.,* 153 *N.J.Super.* 355, 359–60 (Law Div. 1977). Because BFI was found to be 75 percent negligent, its liability is not secondary or vicarious. BFI is liable only for its own wrongful conduct and, therefore, is not entitled to implied indemnification from LCA.

Pointing to the indemnity provision in its standard contract, BFI accurately states that indemnification of a third party by an employer pursuant to an express contract does not disturb the delicate balance struck by the Legislature in the Workers' Compensation Act. Nothing in the Act precludes an employer from assuming a contractual duty to indemnify a third party through an express agreement. *See Yearicks v. City of Wildwood, supra,* 23 *N.J.Super.* at 384; *cf. Gordon Leasing Co. v. Navajo Freight Lines,* 130 *N.J.Super.* 290, 296–97 (Cty.Ct.1974) (declaring indemnity contract void as contrary to policy expressed in ICC regulations).

Indemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally. *Cozzi v. Owens Corning Fiber Glass Corp.,* 63 *N.J.Super.* 117, 121 (App.Div.1960); *Longi v. Raymond-Commerce Corp.,* 34 *N.J.Super.* 593, 603 (App.Div.1955). When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee. *See Longi v. Raymond-Commerce Corp., supra,* 34 *N.J.Super.* at 603; *Huck v. Gabriel Realty,* 136 *N.J.Super.* 468, 475 (Law Div.1975). Thus, a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms. *Longi v. Ray-*

*mond-Commerce Corp.,* supra, 34 *N.J.Super.* at 603; *see
Carbone v. Cortlandt Realty Corp.,* 58 *N.J.* 366, 368 (1971);
*George M. Brewster & Son, Inc. v. Catalytic Const. Co.,* 17
*N.J.* 20, 33 (1954); *Rommell v. United States Steel Corp.,* 66
*N.J.Super.* 30, 43 (App.Div.), *certif. denied,* 34 *N.J.* 580 (1961);
*Cozzi v. Owens Corning Fiber Glass Corp.,* supra, 63 *N.J.Su-
per.* at 121; *Polit v. Curtiss Wright Corp.,* 64 *N.J.Super.* 437,
442–43 (App.Div.1960); *Stern v. Larocca,* 49 *N.J.Super.* 496,
502 (App.Div.1958).

LCA argues that its obligation to indemnify extends only to
BFI's "equipment," which is defined in the service agreement
as the compactor. Furthermore, LCA contends that its agree-
ment to accept responsibility for the compactor exempts it from
liability when the compactor "is being physically handled by
employees of [BFI]." Finally, LCA asserts that the indemnity
clause covers personal injuries arising not out of BFI's, but the
"[c]ustomer's use, operation or possession of the equipment
* * * ."

The Law Division agreed with LCA and interpreted the
agreement as requiring LCA to indemnify BFI from only those
losses that resulted from LCA's negligence. However, the
Appellate Division disagreed and ruled that the agreement
entitled BFI to indemnification for its own negligence. The
Appellate Division focused on the phrase exempting LCA from
liability "for the equipment and its contents except when it is
being physically handled by employees of [BFI]." Because the
present case did not fall within that exception, the Appellate
Division ruled that LCA should indemnify BFI for plaintiffs'
damages. 194 *N.J.Super.* at 101–02. We disagree.

The indemnification agreement clearly imposes on
LCA the duty to indemnify BFI for personal injuries and
property damage arising out of LCA's "use, operation or pos-
session" of the compactor. This case arose not out of such use,
operation, or possession, but from a rut created by BFI.
Hence, the accident did not activate LCA's duty to indemnify

BFI. That conclusion is consistent with another provision in the agreement that LCA is not responsible for the compactor "when it is being physically handled by employees of [BFI]." We recognize that the agreement is ambiguous whether LCA agreed to indemnify BFI from liability for BFI's own acts of negligence that produce injuries at a time other than the moment when BFI is handling the compactor. Construing the ambiguity against BFI, as we must, we conclude further that LCA did not agree to indemnify BFI from liability for creating ruts that subsequently produce injuries. Consequently, BFI is not entitled to indemnification from LCA.

BFI contends further that the trial court erred in not submitting LCA's negligence to the jury, asserting that the jury could better compare BFI's negligence to that of plaintiff if it also considered LCA's negligence. The answer to that contention is found within terms of the Comparative Negligence Act, which restricts the assessment of negligence to "the parties to [the] suit." *N.J.S.A.* 2A:15–5.2b; *Jarrett v. Duncan Thecker Assocs.*, 175 *N.J.Super.* 109, 113 (Law Div.1980). After obtaining its summary judgment of dismissal, LCA was no longer a party to the suit, and the trial court correctly decided not to submit LCA's negligence to the jury. As the Appellate Division pointed out, other causes, such as the snow that fell on the ground, might have contributed to the happening of the accident, yet the degree of fault to be attributed to those additional causes was not submitted to the jury. 194 *N.J.Super.* at 106.

Arguably, the Legislature might have drafted the Comparative Negligence Act to permit jurors to evaluate the percentage of negligence attributable to an absent employer. *Prosser & Keeton, supra,* § 67 at 475–76. Indeed, the Wisconsin Supreme Court has interpreted the Wisconsin law to permit the jury to consider the employer's negligence. *Connar v. West Shore Equip. of Milwaukee Inc.*, 68 *Wis.*2d 42, 227 *N.W.* 2d 660 (1975). Unlike the New Jersey statute, however, the

Wisconsin statute is not restricted to parties to the action. *See Wis.Stat.Ann.* § 895.045 (West 1983). Even if LCA were considered to be a party to the action, BFI would fare no better. Under the Comparative Negligence Act, a party who is compelled "to pay more than such party's percentage share may seek contribution from the other joint tortfeasors." *N.J.S.A.* 2A:15–5.3. As previously explained, LCA is not a joint tortfeasor and, therefore, is not subject to contribution liability under the Comparative Negligence Act.

The judgment of the Appellate Division is reversed, and the cause is remanded to the Law Division for entry of a judgment in favor of LCA.

Justice STEIN concurring in the result.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Affirmed*—None.