**David WELCH and Christine Welch, Plaintiffs,**

v.

**SCHNEIDER NATIONAL BULK CARRIERS and Gateway Terminal Services Corp., Defendants.**

Civ. A. No. 87–2212.

United States District Court, D. New Jersey.

Dec. 28, 1987.

Marc Weinberg, Mt. Laurel, N.J. and Kassab Cherry Archbold Ferrare & Mutzel by Richard A. Stanko (argued), Media, Pa., for plaintiffs.

McElroy, Deutsch & Mulvaney by William T. McElroy (argued), Moira E. O'Connell, Morristown, N.J., for defendant, Gateway Terminal Services Corp.

Palmer Biezup & Henderson by Raymond W. Cobb, Haddonfield, N.J., for defendant, Schneider Nat. Bulk Carriers.

## OPINION

COHEN, Senior District Judge:

This personal injury negligence action is presently before the Court on motion by defendant, Gateway Terminal Services Corporation ("Gateway"), to dismiss the complaint of plaintiffs, David and Christine Welch, and the cross-claim of co-defendant, Schneider National Bulk Carriers ("Schneider"), for failure to state claims upon which relief can be granted. For the reasons that follow, Counts I, III, V, and VI of plaintiffs' complaint shall be dis-

missed[1] and Schneider's cross-claim against Gateway for indemnification shall also be dismissed.

The plaintiff,[2] David Welch, a Pennsylvania resident, instituted this diversity action against the defendants[3] to recover for personal injuries suffered while plaintiff performed duties within the scope of his employment with his employer Gateway. On or about June 7, 1985, plaintiff was engaged in cleaning tankertrailers at Gateway's installation plant in Pedricktown, Salem County, New Jersey. The plaintiff alleges that one such tanker-trailer, owned and operated by Schneider, failed to contain any warnings or markings indicating that it might pose a threat or danger to one in the plaintiff's position. While plaintiff cleaned that tanker with an unmarked and unlabeled cleaning solvent, provided by the defendant Gateway, an explosion occurred which threw plaintiff into the air and onto the pavement causing bodily injury including his body being set on fire.

Plaintiff's complaint avers that defendant Schneider's engagement in ultra-hazardous activity renders it absolutely liable for all injuries resulting from that activity. In addition, it alleges that defendant Schneider was negligent in failing to warn plaintiff of the dangerous substances contained within its tanker-trailer. The complaint also alleges that the defendants violated The Worker and Community Right to Know Act ("Right to Know Act"), N.J.S.A. 34:5A–1 et seq., and The Toxic Substances and Control Act ("TSCA"), 15 U.S.C.A. § 2601 et seq.

In support of its motion to dismiss, defendant Gateway urges that under New Jersey law plaintiff's sole and exclusive remedy against his employer for injuries suffered while working within the scope of his employment is provided by the Workers' Compensation Act, N.J.S.A. 34:15–1 et seq. Gateway also maintains plaintiff has failed to demonstrate that his accident falls within the "intentional wrong" exception to the exclusive remedy provided by the Act. Moreover, Gateway contends that neither the state Right to Know Act nor the federal TSCA afford plaintiff a private right of action for money damages for personal injury. Gateway also argues that the primary provisions of the Right to Know Act were not in effect on the date of the accident, June 7, 1985.

The primary issues to be resolved in the instant matter are whether either the Right to Know Act and/or TSCA provide plaintiff with a private cause of action against an employer for money damages for personal injury. This court's role is to determine the intent of both the state and federal legislatures with regard to these issues.

The New Jersey Legislature enacted the Right to Know Act in response to the growing threat to the public health, safety, and welfare posed by the "proliferation of hazardous substances in the environment." N.J.S.A. 34:5A–2. The Act requires employers to provide workers and the community in general with information regarding toxic and harmful substances in the environment.[4] The legislature concluded that

---

1. Counts I and VI of plaintiffs' complaint allege violations of The Toxic Substances and Control Act, 15 U.S.C.A. § 2601 et seq. Counts III and V allege violations of The Worker and Community Right to Know Act, N.J.S.A. 34:5A–1 et seq.

   Several counts of the complaint will not be dismissed; they include Counts II and IV, which seek recovery from defendant Schneider for negligence and strict liability. Count VII, a claim by plaintiff's wife for loss of consortium, will be dismissed as to the individual defendants, see infra n. 3, and as to defendant Gateway, but not as to defendant Schneider.

2. David Welch's wife, Christine, is also a named plaintiff in this matter; hereafter, usage of the term "plaintiff" will refer only to David Welch.

3. Several individuals, alleged officers and directors of defendant Gateway, were also named defendants in the original complaint. Such individual defendants were voluntarily dismissed from this action by a stipulation of dismissal signed by all the parties and filed on November 9, 1987. The stipulation of dismissal effectively dismissed with prejudice plaintiffs' claims against the individual defendants and defendant Schneider's cross-claim against them for indemnification and/or contribution.

4. Mandating that this information be accessible furthers the purposes of the Act which include, inter alia: to provide workers with information about their working conditions and workplace environment; to give residents information about their community environment; to assist

workers and citizens, armed with such information, will be able to make informed decisions about how best to protect themselves from harmful substances. Primarily, the Act is designed to enforce the citizens' right to know. This legislative purpose is expressed in section two of the Act:

The Legislature therefore determines that it is in the public interest to establish a comprehensive program for the disclosure of information about hazardous substances in the workplace and the community, and to provide a procedure whereby residents of this state may gain access to this information. *Id.*

The Right to Know Act contemplates that various state agencies will ensure employer compliance with its enforcement and regulatory provisions. The Departments of Environmental Protection and Health are authorized to issue orders to employers violating the Act to compel compliance, N.J.S.A. 34:5A–31(b), to commence civil actions in Superior Court, N.J.S.A. 34:5A–31(c), to impose civil administrative penalties, N.J.S.A. 34:5A–31(d), and to impose additional penalties on those who willfully and knowingly violate the Act, N.J.S.A. 34:5A–31(e).[5]

To further enforcement of the workers' and communities' right to know, the Right to Know Act permits private citizens to bring "civil actions" to compel employers' compliance with the Act's provisions. The Act provides that:

*[a]ny person may bring a civil action in law or equity on his own behalf against any employer for a violation of any provision of this act* or any rule and regulation promulgated pursuant thereto or against the Department of Environmental Protection or the Department of Health for failure to enforce the provisions of this act or any rule or regulation promulgated pursuant thereto. The Superior Court shall have jurisdiction over these actions. *The court may award, whenever it deems appropriate, costs of litigation, including reasonable attorney and expert witness fees.* N.J.S.A. 34:5A–23 (emphasis added).

Plaintiff contends that this section of the Act gives him the right to sue his employer, Gateway, and Schneider in tort for money damages for his personal injuries.[6] Plaintiff argues that the Legislature would not have drafted the statute to allow "person[s]" to bring "civil action[s] in law or equity" if it merely intended to permit only injunctive remedies to compel compliance with the Act; specifically, "if the Legislature had intended to grant only the right to sue for a mandatory injunction to compel compliance, or for an injunction to prohibit

---

firefighters, police, and others responding to emergencies such as spills, explosions, or fires; to assist public officials in developing contingency plans in the event of an industrial accident; and, to provide data for use in monitoring and tracking hazardous substances in the workplace and environment. *See* N.J.S.A. 34:5A–2.

N.J.S.A. 34:5A–7 requires employers to complete a workplace survey and identify hazardous substances at their facilities; N.J.S.A. 34:5A–13 requires employers to establish an education and training program for their employees, and N.J.S.A. 34:5A–14 requires employers to label containers containing hazardous substances at their facilities. These sections were amended to give employers until October 30, 1985 to comply with their directives. *L.* 1983, *c.* 315 §§ 7, 13, 14, *eff.* Aug. 29, 1984. Amended by *L.* 1985, *c.* 64, § 1–3; *L.* 1985, *c.* 216, § 1–3.

**5.** The civil action permitted under subsection (c) is for "appropriate relief" which may include "an assessment against the violator for the costs of any investigation, inspection, or monitoring survey" and for "reasonable costs of preparing and litigating the case under this subsection." N.J.S.A. 34:5A–31(c). The civil administrative penalties imposed can be up to $2,500 per violation and $1,000 for each day the violation continues after the violator's receipt of an order to cease. N.J.S.A. 34:5A–31(d). In addition, an employer who violates a court order or who fails to pay in full a civil administrative penalty levied pursuant to subsection (d) is subject to a civil penalty of up to $2,500 per day for each day the violation continues. N.J.S.A. 34:5A–31(e). Willful violators are subject upon order of a court, to a civil penalty of not less than $10,000.00, nor more than $5,000.00 per day of violation. *Id.*

**6.** Plaintiff does not allege in his complaint that the defendants violated any specific provisions of the Right to Know Act. He merely avers that the defendants "acted in a manner that was prohibited by and in violation of The Worker and Community Right to Know Act, N.J.S.A. 34:5A–1 *et seq.*, and that said violation caused plaintiff to sustain severe and painful injuries...." Complaint at ¶ 2 of Counts III and V.

a violation of the Act (both suits *in equity*), why would the Legislature confer the right to bring a civil action *in law*?" Supplemental brief for plaintiff at 4.

In response, defendant Gateway stresses that the Right to Know Act was amended in 1985 to allow employers until October 30, 1985 to comply with its primary provisions. Brief for defendant at 4; *see supra* n. 4. Thus, Gateway argues that it was not subject to the Right to Know Act's provisions on June 7, 1985, the date of plaintiff's accident. Moreover, and perhaps more importantly, Gateway maintains that the Right to Know Act clearly does not grant plaintiff a private right of action against an employer for personal injuries. Brief for defendant at 5–7.

■ As the New Jersey courts have not yet addressed this issue, it is a case of first impression. This court holds that the Right to Know Act does not afford an employee a private right of action to sue any employer in tort for money damages for personal injuries sustained during the course of his employment. A careful reading of the entire statute leads to the conclusion that it was not intended to create such a private right of action. The statute is regulatory in nature, designed to monitor harmful substances in the environment and provide the public with information about these threats to their health.

This court is not persuaded by plaintiff's argument that the phrase used in N.J.S.A. 34:5A–23, providing for a civil action "in law," evinces the Legislature's intent to create a private cause of action by an employee against any employer for injuries sustained during the course of his employment. It is a general principle of statutory construction that a phrase must be construed in light of the entire act of which it is a part. As stated by the New Jersey Supreme Court:

> The statute is to receive a reasonable construction, to serve the apparent legislative purpose. The inquiry in the final analysis is the true intention of the law; and, in the quest for the intention, the letter gives way to the rationale of the expression. The words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms. The particular words are to be made responsive to the essential principle of the law. When the reason of the regulation is general, though the provision is special, it has a general acceptation. The language is not to be given a rigid interpretation when it is apparent that such meaning was not intended. The rule of strict construction cannot be allowed to defeat the evident legislative design.

*Alexander v. N.J. Power & Light Co.*, 21 N.J. 373, 378, 122 A.2d 339, 342 (1956); *accord, State v. Bander*, 56 N.J. 196, 201, 265 A.2d 671, 674 (1970) ("It is a well-known canon of statutory construction that the general intention of a statute will control the interpretation of its parts."). Clearly, when read in light of the entire Act, § 23 must be interpreted as providing private citizens with an enforcement device to compel employers to comply with provisions of the Act.

Furthermore, this court cannot conceive how the Legislature would completely disregard the exclusive remedy provision of the Workers' Compensation Act and do so in two words of a subsection in a very comprehensive Act. In construing statutes, courts must assume that the legislature is thoroughly conversant with its own enactments and with judicial construction of them. *Yacenda Food Management Corp. v. New Jersey Highway Authority*, 203 N.J.Super. 264, 496 A.2d 733 (App.Div. 1985). It is highly unlikely that the Legislature would create such a cause of action by a silent repealer of the exclusive remedy provided in the workers' compensation scheme. As stated in *Henninger v. Bd. of Chosen Freeholders of County of Bergen*, 3 N.J. 68, 68 A.2d 833 (1949),

> [r]epeals by implication are not favored in the law. In the absence of an express repealer indication of an intention of the Legislature to repeal a prior act must be clear and compelling. There is a strong

presumption against such an intention....

*Id.* at 71, 68 A.2d at 834; *accord, Mahwah Twp. v. Bergen County Bd. of Taxation,* 98 N.J. 268, 281, 486 A.2d 818, 825 (1985) ("Every reasonable construction should be applied to avoid a finding of implied repealer.").

N.J.S.A. 34:5A–23 states that "[a]ny person may bring a civil action ... against any employer...." Whether Schneider fits within the definition of an "employer" as used in the Act,[7] this court need not determine. If Schneider is deemed an "employer," our holding today effectively denies plaintiff's claim against Schneider based upon the Right to Know Act; if Schneider is not deemed an "employer," plaintiff has no claim against it under the Right to Know Act, since N.J.S.A. 34:5A–23 only authorizes civil actions against "any employer."

■ In addition to this court's holding that the Right to Know Act does not afford plaintiff a private right of action, defendants Gateway and Schneider did not violate any of its provisions on the date the accident occurred. Plaintiff concedes that the amended provisions of the Right to Know Act imposed no duties upon his employer since they extended the time for compli-

ance with those provisions and were not in effect on June 7, 1985 when the accident occurred; however, plaintiff asserts that the Act did impose certain duties on the employer which went into effect on August 29, 1984 and remained in effect thereafter. Supplemental Brief for plaintiff at 3–4. Plaintiff contends N.J.S.A. 34:5A–12 sets forth those duties requiring "[e]very employer [to] establish and maintain a central file at his facility in which he shall retain a workplace survey for the facility, appropriate hazardous substance fact sheets, and, if applicable, a copy of the environmental survey for the facility." [8] *Id.* Thus, he urges Gateway should be liable for breaching those duties described in N.J.S.A. 34:5A–12.

This argument is not persuasive. Even though this provision became effective on August 29, 1984, the provision relating to the documents required to be maintained in the central file, N.J.S.A. 34:5A–7, gives employers until October 30, 1985 "or within 90 days of the employer's receipt of the workplace survey, whichever is later," to "complete the survey" and to "transmit a copy of the completed survey to the Department of Health," and other governmental bodies.[9] N.J.S.A. 34:5A–7. When interpreting

---

7. N.J.S.A. 34:5A–3(h) defines "employer" as any person or corporation in the State engaged in business operations which has a Standard Industrial Classification, as designated in the Standard Industrial Classification Manual prepared by the federal Office of Management and Budget, within the Major Group Numbers, Group Numbers, or Industry Numbers, as the case may be: ... Major Group Number 47 (Transportation Services), only Group Numbers 471—Freight Forwarding, 474—Rental of Railroad Cars, and 478—Miscellaneous Services Incidental to Transportation ...

8. In addition, that section requires every employer to post on bulletin boards readily accessible to employees a notice of the availability of the information in the file. *See* N.J.S.A. 34:5A–12.

9. The hazardous substance fact sheet referred to in § 12 is the one referred to in N.J.S.A. 34:5A–5. That section requires the Department of Health to develop such a list. The list contemplated by § 5 is a very general list of hazardous substances which is not tailored to a specific workplace or employment facility. *See,* 5a, (1)

through (3) and 5b through f. Section 4 (N.J.S.A. 34:5A–4) also makes it clear that the contemplated list is a general list not related to a specific employment. The manner in which a hazardous substance list is compiled, related to a particular employment, is that the employee workplace survey, not due until October 30, 1985, is first prepared by the employer on forms developed by the Department of Health (N.J.S.A. 34:5A–6). Copies of those completed workplace surveys are sent to the Department of Health at which time the Department of Health aids the employer by obtaining and transmitting to the employer chemical names and Chemical Abstract Service Numbers of chemicals the employer has not been able to obtain from the manufacturer. At the same time, *i.e.,* subsequent to receipt of the workplace survey, not due until October 30, 1985, the Department of Health is required to transmit to the employer "any *appropriate* hazardous substance fact sheets and directions to the employer on how to communicate this information to his employees." N.J.S.A. 34:5A–7a (emphasis supplied). The same grace period to October 30, 1985 applied to the employer's duty to complete the environmental survey and to transmit a copy of

a particular section of a statute, a court must read that section in connection with the entire enactment of which it is an integral part. *See Petition of Sheffield Farms Co.*, 22 N.J. 548, 126 A.2d 886 (1956); *see also Bravand v. Neeld*, 35 N.J. Super. 42, 113 A.2d 75 (App.Div.1955). It is clear that N.J.S.A. 34:5A–12, when read in light of the entire statute, did not require the defendant Gateway to complete a workplace survey as of June 7, 1985. In addition, that section did not require the completion of the environmental survey for the facility nor the retention of the appropriate hazardous substance fact sheets until October 30, 1985, more than four months after plaintiff's accident. Any doubt is resolved by the introductory statement to the Senate bill in question, contained at page 98 of the pocket part of the statute:

This bill would extend the dates of compliance with certain provisions of the "Worker and Community Right to Know Act," P.L.1983, c. 315 (C. 34:5A–1 et al). Employers required to complete a workplace survey or environmental survey would have until October 30, 1985, or within 90 days of receipt of the survey, whichever is later, to complete the survey. In addition, employers would have until October 30, 1985 to establish education and training programs for the handling of hazardous substances and to label containers containing hazardous substances.

This court concludes that neither Gateway nor Schneider violated any of the provisions of the Right to Know Act on the date of plaintiff's accident since they had no obligations under the Act until four months later. As such, even if the Act were found to allow a private right of action for compensatory damages for plaintiff's injuries, this action could not be maintained.

Plaintiff also seeks damages for the defendants' violations of the TSCA, 15 U.S.C.A. § 2601 *et seq.* That Act provides for the monitoring and regulating of toxic substances that may "present an unreasonable risk of injury to health or the environment," 15 U.S.C.A. § 2601(b)(2), and confers upon the Administrator of the Environmental Protection Agency the power to collect data on hazardous substances and to enforce the provisions of the Act. *See* 15 U.S.C.A. § 2601. This court must decide whether that federal statute provides for a private cause of action for personal injuries.

The statute reads, in pertinent part:

**In general.**—except as provided in section (b) of this section, *any person may commence a civil action* —

(1) against any person (including (A) the United States and (B) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of this chapter or any rule promulgated under Section 2603, 1604 or 2605 of this title or order issued under Section 2604 of this title *to restrain such violation,* or

(2) against the Administrator *to compel the Administrator to perform any act or duty under this chapter which is not discretionary.*

15 U.S.C.A. § 2619 (emphasis added). The plain language of the above-quoted section suggests that Congress intended to grant "person[s]" civil actions merely to "restrain" violations of the Act and not to recover damages for personal injuries.[10]

In *Adams v. Republic Steel Corp.*, 621 F.Supp. 370 (W.D.Tenn.1985), the District Court of Tennessee held that no private right of action for compensatory damages exists under the TSCA; the court relied upon the analysis used by the United States Supreme Court in *Middlesex County Sewerage Authority v. National Sea Clammers*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), where the high court

that document to the Department of Environmental Protection. N.J.S.A. 34:5A–7b.

**10.** According to the Senate's Commerce Committee Report, the purpose of the TSCA is "to *prevent* unreasonable risks of injury to health or the environment associated with … chemical substances." S.Rep. No. 698, 94th Cong., 2d Sess., reprinted in 1976 U.S.Code Cong. & Ad. News at 4491 (emphasis added).

construed two similarly worded statutes providing for private actions, the Federal Water Pollution Control Act ("FWPCA"), 86 Stat. 816, as amended, 33 U.S.C. § 1251 *et seq.* (1976 ed. and Supp. III), and the Marine Protection, Research, and Sanctuaries Act of 1972 ("MPRSA"), 86 Stat. 1052, as amended, 33 U.S.C. § 1401 *et seq.* (1976 ed. and Supp. III). 621 F.Supp. at 376. In *Sea Clammers, supra,* the Supreme Court held that neither the FWPCA nor the MPRSA implied a private right of action independent of their citizen suit provisions. 453 U.S. at 11, 101 S.Ct. at 2621. The court reasoned:

> The key to the inquiry is the intent of the Legislature. We look first, of course, to the statutory language, particularly to the provision made therein for enforcement and relief. Then we review the legislative history and other traditional aids of statutory interpretation to determine congressional intent.

> These Acts contain unusually elaborate enforcement provisions, conferring authority to sue for this purpose both on governmental officials and private citizens.... These enforcement mechanisms, most of which have their counterpart under the MPRSA, are supplemented by the express citizen suit provisions in § 505(a) of the FWPCA, 33 U.S.C. § 1365(a), and § 105(g) of the MPRSA, 33 U.S.C. § 1415(g). *See* nn. 9, 11, *supra. These citizen suit provisions authorize private persons to sue for injunctions to enforce these statutes.* Plaintiffs invoking these provisions first must comply with specified procedures—which respondents here ignored—including in most cases 60 days' prior notice to potential defendants.

In view of these elaborate enforcement provisions it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under MPRSA and FWPCA. As we stated in *Transamerica Mortgage Advisors, supra,* "*it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.*" *In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate. Id.* at 13–15, 101 S.Ct. at 2622–23 (emphasis added).

■ In light of the marked similarities in the enforcement provisions and policy underlying the TSCA and both the FWPCA and the MPRSA, this court follows the decision in *Adams* adopting the reasoning of the Supreme Court in *Sea Clammers;* no implied private right of action exists under the TSCA by which plaintiff can seek redress for his personal injuries.

■ Plaintiff is also barred from asserting a tort action against his employer, the defendant Gateway, by the exclusive remedy provision of the Workmen's Compensation Act. *See* N.J.S.A. 34:15-8.[11] The allegations in plaintiff's complaint do not meet the standards imposed by the New Jersey courts to fall within the "intentional wrong" exception to the exclusive remedy provided by the workers' compensation scheme. Plaintiff makes no assertions that the defendant Gateway intentionally caused his injuries or that the defendant was "substantially certain" that the accident would result from its actions. *See Millison v. E.I. du Pont de Nemours & Co.,* 101 N.J. 161, 501 A.2d 505 (1985).

---

11. This section provides:

Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in this article and an acceptance of all the provisions of this article, and shall bind the employee and for compensation for the employee's death shall bind the employee's personal representatives, surviving spouse and next of kin, as well as the employer, and those conducting the employer's business during bankruptcy or insolvency.

If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, *except for intentional wrong.* N.J.S.A. 34:15-8 (emphasis added).

Thus, plaintiff is barred from bringing any common law tort action for damages for personal injuries against his employer. *Id.*

In addition to plaintiff's claims against Gateway, defendant Schneider cross-claims against Gateway for indemnification and/or contribution. Gateway, asserting that the cross-claim fails to state a cause of action upon which relief can be granted, now moves for dismissal pursuant to Fed. R.Civ.P. 12(b)(6). In deciding this motion, all material allegations in the complaint are accepted as true and construed in the light most favorable to the nonmoving party, Schneider. *North Star International v. Arizona Corporation Com'n*, 720 F.2d 578, 580 (9th Cir.1983).

 The New Jersey Supreme Court has recently addressed the question of whether contribution or indemnification may be obtained from an employer who is covered by the Workers' Compensation Act. In *Ramos v. Browning Ferris Industries*, 103 N.J. 177, 510 A.2d 1152 (1986), the Court found that since the statutory remedy of workers' compensation is an exclusive remedy, an employer subject to the Act cannot be considered a "joint tortfeasor." *Id.* at 184, 501 A.2d 1152. Accordingly, it held that such an employer is not subject to the provisions of the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A–1, and that a third-party tortfeasor cannot obtain contribution from such an employer. *Id.* Given this absolute bar to Schneider's recovery from Gateway in contribution, this aspect of Gateway's motion will be granted.

Schneider's claim for indemnification does not appear to be based on a contract provision requiring indemnification, but rather on the theory of implied indemnification.[12] In *Ramos, supra,* the Court explained that the Workers' Compensation Act precludes recovery in indemnification except where "a special legal relationship exists between the employer and the third party, and the liability of the third party is vicarious." *Id.* at 189, 510 A.2d 1152 (citations omitted). It went on to hold

that a contract to haul solid waste was insufficient to establish a claim for indemnification. *Id.* at 190, 510 A.2d 1152. In the instant matter, Schneider has not pleaded any facts which could conceivably establish a "special relationship." As a potential third-party tortfeasor, Schneider is in a situation similar to that of the solid waste hauler in *Ramos.* Gateway's motion to dismiss the claim for indemnification will therefore be granted.

Accordingly, Counts I, III, V, and VI of plaintiff's complaint must be dismissed. The defendant Gateway shall also be dismissed from Count VII of the complaint. Schneider's crossclaim against Gateway for indemnification and/or contribution must also be dismissed. Plaintiff will be permitted to maintain Counts II, IV and VII of his complaint against Schneider.

An appropriate order shall be entered.

---

12. Schneider did not even allege a contract between it and Gateway and has not responded to Gateway's motion.