**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1721-24

DEJAN MICAKOWSKI,

     Plaintiff-Appellant,

and

JANNETTE NADLER,

     Plaintiff,

v.

ELZBIETA BURAK and
JOZEF BURAK,

     Defendants/Third-Party
     Plaintiffs-Respondents,

v.

MD GROUP, LLC,

     Third-Party Defendant/
     Respondent.

_____

Argued March 26, 2026 – Decided June 2, 2026

Before Judges Mawla and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0698-23.

Borce Martinoski (Borce Martinoski, LLC) argued the cause for appellant.

Chase T. Gunther argued the cause for respondents Elzbieta Burak and Jozef Burak (Powell, Kugelman & Postell, LLC, attorneys; Chase T. Gunther and Joseph M. Powell, on the brief).

Andrew R. Churchill argued the cause for respondent MD Group, LLC (Reilly, McDevitt & Henrich, PC, attorneys; Gino P. Mecoli and Andrew R. Churchill, on the brief).

PER CURIAM

Plaintiff Dejan Micakowski appeals from the trial court's February 3, 2025 order dismissing his complaint with prejudice and granting summary judgment to defendants Elzbieta and Jozef Burak (collectively, the Burak defendants).[1] We affirm.

I.

The Burak defendants own mixed-use property located at 324 River Drive in Garfield. Through his wholly owned company, third-party defendant MD Group, LLC, which owned the restaurant he operated on the first floor,

---

[1] While the caption lists both plaintiffs, the notice of appeal only listed Micakowski as the appellant.

A-1721-24

Micakowski and the Burak defendants entered into two separate commercial leases for the property. The first lease, covering the first floor and basement and dated September 20, 2016 (First Floor Lease), included an indemnification clause in the thirteenth covenant, providing: "The [l]andlord shall not be liable . . . for injury . . . to person or property caused by the elements . . . or resulting from . . . snow, which may leak or flow from any part of said building, or from the pipes, . . . or from any other place." Micakowski agreed to maintain the property, as reflected in the twenty-second covenant of the lease, which provides: "[T]he [t]enant will keep the sidewalk and curb in front thereof clean at all times and free from snow and ice."

The second lease, which was undated, related to the use and occupancy of the property's front store space (Front Store Lease). Micakowski's responsibility to maintain the property is specified in paragraph 5 "Repairs and Care," wherein he agreed to keep and maintain the sidewalks, driveways, hallways, and stairs in a clean condition and free from snow and ice. This lease also included an indemnification clause in paragraph 12, stating:

> The [t]enant will hold harmless and indemnify the [l]andlord from and for any and all payments, expenses, costs, reasonable attorney fees[,] . . . and from any and all claims and liability for losses or damage to property or injuries to persons occasioned wholly or in part by or resulting from any acts or omission by the [t]enant

3

. . . or for any cause or reason whatsoever arising out of or by reason of the occupancy of the [p]remises . . . .

Additionally, in paragraph 23 "Non-Liability of Landlord," Micakowski agreed: "The [l]andlord will not be liable for any . . . injury which may be sustained by the [t]enant . . . as a consequence of the . . . leakage, . . . of . . . gutters, . . . [or] downspouts, . . . by reason of the elements; or resulting from the carelessness, negligence[,] or improper conduct on the part of any other tenant or of the[l]andlord . . . . "

The rider to the Front Store Lease (Front Store Rider) did not address maintenance related to the elements. Both leases were for a five-year period from November 1, 2016, and concluding on October 30, 2021.

In February 2021, Micakowski slipped and fell on black ice near a downspout in the property's parking lot while returning from taking garbage to the dumpster in the back of the parking lot, sustaining a serious injury. Micakowski alleged the drainpipe attached to the side of the building leaked water and formed a pool of black ice in the parking lot near the entrance to his business.

After the incident, the Burak defendants gave Micakowski a renewal rider that proposed new terms for extending the lease. Unlike the Front Store Rider, the handwritten renewal rider explicitly shifted responsibility for maintaining

4

the parking lot to the tenant, stating: "keep clean, winter time remove the snow [from] the parking lot and front of the business." The rider was delivered on September 14, 2021, and signed by the parties. A second signature page was attached to the rider, which included the notations "delivery 9/14/21" and "no renewal lease." This page was dated October 6, 2021.

In February 2023, Micakowski filed a complaint against the Burak defendants, alleging their negligent maintenance of the Property created the hazardous condition that caused his injuries. His wife, Jannette Nadler, also asserted a per quod claim. In response, the Burak defendants filed an answer and third-party complaint against MD Group, alleging breach of contract and seeking contribution and indemnification.

Following the close of discovery, the Burak defendants moved for summary judgment, relying on the express indemnification clauses in both leases. They argued both leases unambiguously place responsibility for snow and ice removal on Micakowski, as the tenant. In opposing defendants' motion, Micakowski contended the leases and Front Store Rider contain conflicting and ambiguous clauses regarding responsibility for maintenance and indemnification. Additionally, Micakowski argued the Burak defendants' ongoing use and control of the parking area precluded summary judgment.

A-1721-24

Oral argument was held. On February 3, 2025, the trial court entered its order. In the accompanying opinion, the court, relying on applicable legal principles, explained "the [l]ease [a]greements signed between [p]laintiff and the Burak [defendants] contained multiple provisions indemnifying and holding the Burak[] [defendants] harmless for an injury suffered by the [t]enant based on the failure or malfunction of portions of the property such as the roof, gutters, pipes, and downspouts." Based on the unambiguous language of both leases, the court determined the Burak defendants were entitled to summary judgment. The court declined to address issues regarding the parties' conduct or control over the premises based upon the indemnification language of the leases.

## II.

Micakowski presents three arguments for our consideration. First, he contends the trial court erred in granting summary judgment because the lease agreements and riders have conflicting terms. Second, Micakowski argues summary judgment was improper due to the differing maintenance clauses found in the leases and the riders. Finally, he asserts summary judgment should not have been granted because the Burak defendants retained control over the back garage, driveway, and parking lot.

6

We review the grant of summary judgment de novo, applying the same standard used by the trial court. Thomas Makuch, LLC v. Twp. of Jackson, 476 N.J. Super. 169, 184 (App. Div. 2023) (citing Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021)). Under this standard, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Alfano v. Schaud, 429 N.J. Super. 469, 474-75 (App. Div. 2013) (internal quotation marks omitted) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

Our inquiry centers on the interpretation of both leases, particularly whether the indemnification provisions are clear and unambiguous. In addressing this issue, we note "[b]ecause contract interpretation is a question of law . . . review[ed] de novo, we 'pay no special deference to the trial court's interpretation and look at the contract with fresh eyes.'" Del. River Joint Toll Bridge Comm'n v. George Harms Constr. Co., 258 N.J. 286, 303 (2024) (quoting

Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)). Nor do we defer to the court's legal analysis. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018).

We ordinarily interpret indemnification and exculpatory clauses in accordance with the rules governing the construction of contracts. Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 103 N.J. 177, 191-92 (1986). Therefore, "an ambiguous contractual indemnification provision must be construed against the indemnitee." Englert v. Home Depot, 389 N.J. Super. 44, 57 (App. Div. 2006) (citing Ramos, 103 N.J. at 191). Stated differently, we should not "rewrite a contract for the parties better than or different from the one they wrote for themselves." Kieffer, 205 N.J. at 223 (citing Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)).

Micakowski's argument the leases and riders have conflicting terms and are therefore ambiguous is unavailing. Relying on Ramos and Mantilla v. NC Mall Associates, 167 N.J. 262, 272-73 (2001), Micakowski contends the lease did not state in unequivocal terms the duty to indemnify extended to the indemnitee's negligence.

The Front Store Lease and its rider do not conflict with the First Floor Lease's assignment of responsibility for snow and ice removal. While the Front

Store Rider outlines additional duties for Micakowski, it does not limit or override Micakowski's obligations established in either the First Floor or Front Store leases. Moreover, the later renewal rider—which would have explicitly assigned maintenance of the parking lot and driveway to Micakowski—does not govern the parties' responsibilities. Any evidence of the post-incident lease extension would have been inadmissible at trial to prove negligence under N.J.R.E. 407 as a subsequent remedial measure.

"The polestar of contract construction is to discover the intention of the parties as revealed by the language used by them." Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 333 N.J. Super. 310, 325 (App. Div. 2000). "The interpretation, moreover, should 'accord with justice and common sense.'" Ibid. (quoting Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956)).

Here, the parties executed two leases for the same five-year period, each containing its own indemnification and maintenance clauses. Under the First Floor Lease, Micakowski accepted responsibility for keeping the sidewalk and curb free from snow and ice. Under the Front Store Lease, he agreed to maintain the sidewalks and driveways in the same manner. Both leases unambiguously reflect the parties' intent that Micakowski, as the commercial tenant along with

MD Group, was solely responsible for snow and ice removal.  Geringer v. Hartz Mountain Dev. Corp., 388 N.J. Super. 392, 401 (App. Div. 2006).

We conclude the indemnification provisions in both leases clearly demonstrate an intent to relieve the landlord of liability for injuries resulting from snow, ice, or water leakage from downspouts.  Accordingly, no reasonable factfinder could determine the Burak defendants were responsible for Micakowski's injuries.  Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021).

Giving all legitimate inferences from the facts in favor of Micakowski as the non-moving party, there was no genuine issue of material fact.  Friedman v. Martinez, 242 N.J. 449, 472 (2020).  Micakowski has not presented any evidence to create such an issue.  Thus, we conclude summary judgment was properly granted in favor of the Burak defendants.

The remaining issues raised by Micakowski lack sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-1721-24