**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2308-17T2

GRANDVIEW AT RIVERWALK
PORT IMPERIAL CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff,

v.

K. HOVNANIAN AT PORT
IMPERIAL URBAN RENEWAL
II, LLC, K. HOVNANIAN
DEVELOPMENTS OF NEW
JERSEY, INC., and HOVNANIAN
ENTERPRISES, INC.,

      Defendants-Appellants,

and

RTKL NEW JERSEY ARCHITECTS,
P.A.,

      Defendant-Respondent,

and

AG CONSTRUCTION; WHITESTONE CUSTOM BUILDERS; MEGA CONSTRUCTION CORP.; QUAKER WINDOWS & DOORS; MAPLEWOOD BUILDING SUPPLY; BENFATTO CONSTRUCTION; AITEC LLC; GICOMELLI TILE; BAMCO, INC.; PHOENIX GLAZING; CHARLES L. KANE; CLEM'S ORNAMENTAL IRONWORKS, INC.; ARCHITECTURAL RESTORATION & WATERPROOFING; SOUTH SHORE CONSTRUCTION; EASTERN WATERPROOFING & RESTORATION; PAULUS, SOKOLOWSKI & SARTOR; THE MCLAREN ENGINEERING GROUP; RAMCO CONSTRUCTION; K. HOVNANIAN HOMES a/k/a and/or d/b/a K. HOVNANIAN HOMES, LLC and/or K. HOVNANIAN HOMES, INC.; K. HOVNANIAN/SHORE ACQUISITIONS, LLC.; K. HOVNANIAN CONSTRUCTION MANAGEMENT, INC.; PILLARI, LLC; HEAVY CONTRACTORS; MUESER RUTLEDGE CONSULTING ENGINEERS; MAX HVAC, INC.; JERSEY FIRESTOP, LLC; F&G MECHANICAL CORPORATION; K. HOVNANIAN COMPANIES, LLC; K. HOVNANIAN NORTHEAST, INC. a/k/a and/or d/b/a K. HOVNANIAN COMPANIES NORTHEAST, INC.; K. HOVNANIAN ENTERPRISES, INC.; BLUEFIN CONSTRUCTION CORP.; K. HOVNANIAN CONSTRUCTION II, INC.; K. HOVNANIAN COOPERATIVE, INC.; MAPLEWOOD BUILDING SPECIALTIES, INC.; SAY SERVICE

A-2308-17T2

CO., INC.; ROLF JENSEN &
ASSOCIATES, INC.; K. HOVNANIAN
HOLDINGS NJ, LLC; and
K. HOVNANIAN DEVELOPMENT OF
NEW JERSEY II, INC.,

    Defendants.

_____

    Argued May 1, 2019 - Decided August 13, 2019

    Before Judges Accurso, Vernoia and Moynihan.

    On appeal from the Superior Court of New Jersey,
    Law Division, Hudson County, Docket No. L-2560-
    13.

    Donald E. Taylor argued the cause for appellants
    (Wilentz, Goldman & Spitzer, PA, attorneys; Donald
    E. Taylor, of counsel and on the briefs; Richard J.
    Byrnes and Daniel A. Cozzi, on the briefs).

    Gary C. Chiumento argued the cause for respondent
    (Chiumento McNally, LLC, attorneys; Gary C.
    Chiumento, of counsel and on the brief; Jordan S.
    Tafflin and Paige M. Bellino, on the brief).

PER CURIAM

    Defendant K. Hovnanian at Port Imperial Urban Renewal II, LLC

appeals from the denial of its post-trial motion seeking indemnification from

RTKL New Jersey Architects P.A. for the $3 million in damages the jury

awarded plaintiff Grandview at Riverwalk Port Imperial Condominium

Association, Inc. for Hovnanian's breach of express warranty and consumer

fraud. Because we find the parties did not contract for Architects to indemnify Hovnanian for those damages, we affirm.

Narrowed to the issues presented on appeal, the key facts of plaintiff's case against Hovnanian and Architects are easily summarized. Hovnanian acquired a residential development project, Grandview at Riverwalk Port Imperial, in West New York from the original developer in June 2003. Architects had worked for the original developer, and Hovnanian contracted with it to complete the design of the 132-unit building and provide construction contract administration services. Hovnanian issued a public offering statement to purchasers of units at Grandview providing that "the Common Elements are fit for their intended use."

The plans Hovnanian submitted to, and obtained approval from, the Town of West New York called for a "Type 2B" building, requiring use of fire-retardant-treated wood. In May 2004, a consultant Hovnanian hired to review Architects's plans for insurance purposes questioned whether the building had the necessary fire rating to meet the requirements of a Type 2B building.

In February 2005, Architects advised Hovnanian the existing plans called for untreated plywood in the floor assemblies, contrary to Type 2B

4

requirements. Architects raised the possibility of applying fire-retardant chemicals to the plywood already installed, but was not sure whether the "local authority" would accept this solution, as it did not involve treating the wood with a "pressure process" at the manufacturer. Architects noted that "[t]his could be a very sensitive topic" that "may require a review and approval by both the building department and the fire marshal."

Hovnanian and Architects met in April 2005 to discuss the problem, by which time more than half the plywood had already been installed and Hovnanian was not willing to consider solutions that would disrupt the construction schedule. The parties discussed "several solutions" that "centered on converting the assembly" from a Type 2B building classification to a "Type 3A" classification by either adding an additional sprinkler system or "filling the void space" in the floor assemblies with a non-combustible material to satisfy Type 3A requirements.

Hovnanian summarized the meeting and next steps in an email noting "[t]iming is critical," and the matter "must be handled properly." The email stated the modification "needs to be presented to the town building department, either as a request or in the form of an advisory that we are changing from a 2B to a 3A," and that Architects was to "produce a detail of their official,

professional recommendation for the revised assembly, bearing in mind the

costing issues discussed in the selection of materials."

Architects responded by email, stating:

> We believe that the use of the plywood (untreated or treated) at the deck assembly in [Grandview] should require that it be classified as a Type 3A (non-combustible/combustible) construction type under BOCA 96. It was my understanding that the strategy was that we would raise this as a concern and make this a recommendation to the local authority along with describing the action necessary to accomplish that change and allow them to react. We believe they will see the situation the same way but until they do so we have not presumed anything.

An internal Hovnanian email a few days later, principally concerning

permits for another building, noted:

> This is all further complicated by the expected fire assembly changes for the floors being developed by [Architects] for both buildings [including Grandview]. As I said in that action plan, we need to be extremely thoughtful on how all of that is presented. I am expecting draft materials from [Architects] this weekend and will need to review and approve by the first of the week.
>
> This may be another situation where we may need to use some political capital to expedite approvals of the changes.

Architects drafted a formal letter to Hovnanian dated April 18, 2005, (1)

outlining the issue with having plywood in Type 2B construction, (2) stating

6

the classification of Grandview "may need to be changed to a Type 3A," (3) recommending "that this situation be reviewed with the local code authority as soon as possible," (4) detailing the alterations that would be implemented if the change to Type 3A was accepted, and (5) offering assistance to Hovnanian in resolving the issue with the local authority. Hovnanian forwarded Architects's letter to the construction code official in West New York, noting that "some of the details may warrant a revision from the current Type 2B Construction Classification to a Type 3," and advising it would prepare "formal submissions of the revised plans" and forward them to the code official within two weeks.

Architects prepared plans for the revised building classification in May, which Hovnanian hand-delivered to West New York. Hovnanian's representative admitted at trial that he never saw any documentation approving the Type 3A plans and could not recall whether the local authority ever responded to the requested change in classification. Architects requested an "updated status of the resubmittals" from Hovnanian on June 29, 2005. Hovnanian responded that it had met with officials the day before about changes to a different building, but "[b]eyond that, they have made no further comments or requests as a result of the changes" relating to Grandview.

7

There is nothing in the record to show that Hovnanian took any steps to obtain approval of the classification change beyond hand-delivering the plans, nor anything to show that West New York ever approved it. The town issued a certificate of occupancy for the 132 residential units in Grandview in November 2006. Although Hovnanian several times amended its public offering statement, it never disclosed that West New York had not approved the plans changing the building's classification from Type 2B to Type 3A.

Plaintiff's architectural expert testified that the conversion from Type 2B construction to Type 3A was a "major change," and that when Architects discovered Grandview did not meet the requirements of Type 2B construction, it should have told Hovnanian to stop all work and ensured West New York approved the classification change before proceeding. The expert further opined that Grandview, as constructed, would not meet the Type 3A requirements.

The expert testified Grandview was constructed with "western deck framing," meaning that "you build a wall, then you build the floor, and then build a wall on top of that floor, then you build a floor." He explained that a Type 3A building should have "a solid masonry wall" on the exterior where the floor "wouldn't interrupt the structure load path of the exterior wall."

According to the expert, the exterior walls of Grandview could collapse in a fire, which would not occur had they been built properly in accordance with the requirements of a Type 3A building.

Plaintiff's expert concluded that the exterior walls of Grandview, as constructed, were not fit for their intended purpose. The expert acknowledged that West New York could have permitted Hovnanian to deviate from the BOCA code, thus allowing the walls as constructed, but opined a waiver after construction would be inappropriate because it would not render the building safer in a fire. According to the expert, a waiver "won't slow the fire down. Fire doesn't know you have a waiver."

Responding to questions posed by a specifically detailed verdict sheet, the jury found plaintiff proved Architects was negligent in the design of Grandview, and that Hovnanian failed to meet an express promise that the common elements would be fit for their intended purpose. The jury found plaintiff suffered damages of $4 million, for which Hovnanian was responsible for $3 million and Architects responsible for $1 million. As to consumer fraud, the jury found plaintiff proved Hovnanian "omitted an important and significant fact . . . with the intent that others would rely" thereon in connection with the sale of the units by stating the common elements "would

9

be fit for their intended use," and that plaintiff had proved an ascertainable loss of $3 million, trebled to $9 million.

The indemnification clause at issue provides as follows:

> <u>Architect hereby agrees to assume the entire responsibility and liability for</u> any and all injuries or death of any and all persons and <u>any and all losses or damages to property caused by or resulting from or arising out of any negligent act, error or omission on the part of the Architect</u>, its agents, officers, employees, subcontractors or servants <u>in connection with this Agreement or with the prosecution of the work hereunder</u>, whether covered by the insurance specified herein or not. Architect shall indemnify, and save harmless Owner, its agents, officers, employees, affiliated entities from any and all claims. losses, damages, fines or penalties, legal suits or actions including reasonable attorney's fees, expenses and costs which may arise out of any and all such claims, losses, damages, legal suits or actions for the injuries, deaths, losses and/or damages to persons or property.
>
> [(Emphasis added).]

The trial court judge denied Hovnanian's motion for indemnification prior to trial, finding the issue would not be ripe until the jury had assessed the negligence of Architects, if any. After trial, when the motion was renewed, the judge denied indemnification based on the language of the clause and the jury's findings. Specifically, the judge found the language of the clause was clear

A-2308-17T2

that Architects had only agreed to indemnify Hovnanian for Architects's negligence, not for Hovnanian's own negligence.

Further, the judge noted the case did not go to the jury on a negligence theory against Hovnanian, that claim having been dismissed on summary judgment prior to trial. Finding the breach of warranty claim against Hovnanian "completely separate," the judge concluded Hovnanian was seeking indemnification for its own "broken promises" not permitted by the language of the clause. He further found that affording Hovnanian "this broad indemnity for all fault related to the actions of [Architects]" would offend New Jersey public policy. Although the judge acknowledged "that without the negligence of [Architects], the issues of the breach of warranty" would never have arisen, he concluded

> [i]t is the actions after the notification of the problem and the efforts taken essentially to cover up the problem solely at the hand of [Hovnanian] and without any proof of any involvement in this endeavor by [Architects] that sounded the death knell for any indemnification, even if one were to be found under the terms of the agreement.

Hovnanian appeals, arguing Architects is contractually obligated to indemnify Hovnanian for the damages awarded against it by the jury because

11

they arose out of Architects's negligence in designing the building contrary to code requirements. We disagree.

We review questions of contract interpretation de novo, with no special deference to the trial court's interpretation of the agreement. Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011). Although we do not subscribe to the trial court judge's view that the nature of the claim, tort or breach of warranty, is meaningful[1] or that public policy would bar Hovnanian's indemnification

---

[1] To the extent the judge's remarks on the record could be construed to suggest that indemnification was precluded as a matter of law by the fact that plaintiff's claim against Hovnanian sounded in breach of warranty while its claim against Architects sounded in tort, we disagree. The nature of the claim is not dispositive. One can easily imagine a scenario in which a developer relied in good faith on an architect's design, knew nothing of possible code violations, obtained all necessary approvals from the local authority, and discovered long after construction was completed that a problem existed in the common areas of a building. The developer's liability for breach of warranty in that scenario would be based solely on its ownership of a building with a code violation. See, e.g., Reyes v. Egner, 404 N.J. Super. 433, 458 (App. Div. 2009) (noting "an owner of property is 'directly responsible for compliance' with the building codes, even if a developer who previously had title to the property had built the offending component of the dwelling" (quoting DKM Residential Props. Corp. v. Twp. of Montgomery, 363 N.J. Super. 80, 93 (App. Div. 2003), rev'd on other grounds, 182 N.J. 296 (2005))), aff'd, 201 N.J. 417 (2010). In such a circumstance, the developer would be entirely without fault, and thus entitled to indemnification under a clause such as the one in the parties' contract, regardless of whether that claim sounded in tort or contract.

A-2308-17T2

here,[2] we have no hesitation in concluding the trial court was correct that Architects does not owe Hovnanian indemnification under their agreement.

Indemnity provisions are construed in accordance with the general rules for construction of contracts with one important caveat:  ambiguities are strictly construed against the indemnitee.  Mantilla v. NC Mall Assocs., 167 N.J. 262, 272 (2001).  In keeping with that principle, "a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 103 N.J. 177, 191 (1986).

Here, the plain language of the indemnification clause makes clear beyond any doubt that Architects only agreed "to assume the entire responsibility and liability for . . . any and all losses . . . caused by or resulting from or arising out of any negligent act, error or omission on the part of the Architect . . . in connection with this Agreement or with the prosecution of the work hereunder" (emphasis added).  The clause thus provides only that

---

[2]  Where an indemnitee is partially but not solely at fault, as here, public policy does not preclude indemnification.  Leitao v. Damon G. Douglas Co., 301 N.J. Super. 187, 192 (App. Div. 1997) ("Even in the context of an indemnity agreement in a construction contract, it is not against public policy for the indemnitor to promise to hold harmless the indemnitee for the indemnitee's own negligence as long as the indemnitee is not solely at fault.").

A-2308-17T2

Architects will indemnify Hovnanian for Architects's own negligence and nowhere suggests that Architects would be responsible to indemnify Hovnanian for Hovnanian's own conduct. As an intent by Architects to indemnify Hovnanian against losses resulting from Hovnanian's own conduct "is neither expressed in unequivocal terms, nor reasonably implied," Carvalho v. Toll Bros. & Developers, 278 N.J. Super. 451, 466 (App. Div. 1995) (citation omitted), the agreement cannot be construed to afford Hovnanian indemnification for its own conduct.

The trial court judge properly rejected, as do we, Hovnanian's claim that the evidence established its liability was merely passive; that it first learned of an issue with Type 2B code compliance at the April 2005 meeting, that Architects provided a solution to the problem on the same day, and that it was unaware that Architects's revised plans were not compliant with the requirements for a Type 3A building. We acknowledge that was the case Hovnanian presented to the jury. But there was certainly other evidence in the record to permit the jury to conclude that Hovnanian was aware of the problem with the untreated plywood as early as May 2004 when its consultant raised questions about the building's fire rating, that it knew Architects's proposed solution of reclassifying the building required the town's approval and

14

certainly knew that it proceeded with construction without ever securing that approval or amending the public offering statement.

Most important, the jury's verdict makes plain it found both Architects and Hovnanian separately responsible for the damages plaintiff suffered. In charging the jury, the trial judge instructed it could find liability on multiple claims but could not duplicate damages. Specifically, the judge charged:

> In reviewing the evidence in this case, you should consider each of the plaintiff's claims as separate and distinct claims. You may, considering the evidence, decide to find for the plaintiff on any one of the claims, all of the claims or none of the claims. If, however, you find for the plaintiff on one or more of the claims, the award of damages may not be included in the awards or damages for other claims based on the same losses or harm suffered by the plaintiff.

A review of the verdict sheet shows the jury did exactly as the judge instructed. It found plaintiff suffered a total of $4 million in damages as a result of Grandview's code deficiencies, that $1 million of those damages was attributable to Architects's negligence, and $3 million was attributable to Hovnanian's breach of warranty and consumer fraud. By separating Architects's portion of fault and attributing the entirety of the $3 million in damages for Hovnanian's breach of warranty to plaintiff's ascertainable loss

A-2308-17T2

under the Consumer Fraud Act, the jury only assigned those damages to Hovnanian it found were based on Hovnanian's own fault.

Accordingly, although Hovnanian is undoubtedly correct that its own breach of warranty would not have occurred but for Architects's negligence, the jury's verdict established conclusively that Architects's negligence was not the sole cause of Hovnanian's breach. See Ramos, 103 N.J. at 191 ("To be entitled to indemnification as one who is secondarily or vicariously liable, a party must be without fault.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION